[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Daniel*, Slip Opinion No. 2023-Ohio-4035.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-4035

THE STATE OF OHIO, APPELLEE, *v*. DANIEL, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Daniel*, Slip Opinion No. 2023-Ohio-4035.]**

*Criminal law—Constitutional law—Separation of powers—Arson-offender registration—Reduced registration period—Ohio's arson-offender-registration scheme does not violate separation-of-powers doctrine—Certified-conflict question answered in the negative and court of appeals' judgment affirmed.*

(No. 2022-0603—Submitted March 21, 2023—Decided November 9, 2023.)

CERTIFIED by the Court of Appeals for Lucas County,
No. L-21-1104, 2022-Ohio-1348.

_____

DEWINE, J.

{¶ 1} By statute, a person convicted of arson is required to register as an arson offender for life.  The sentencing judge may reduce the registration period, but only if the prosecuting attorney and the investigating law-enforcement agency

recommend a reduction. In this case, we address whether it violates the separation-of-powers doctrine to tie the judge's ability to reduce the registration period to a recommendation from executive-branch officials. We hold that it does not. The Sixth District Court of Appeals reached the same conclusion, so we affirm its judgment.

## I. The arson-offender-registration scheme

{¶ 2} In 2012, the Ohio General Assembly passed a law establishing a registry of people convicted of arson-related crimes. *See* 2012 Am.Sub.S.B. No. 70. The law applies to those convicted of arson or aggravated arson as well as those convicted of a related attempt or conspiracy or complicity offense. R.C. 2909.13(A).

{¶ 3} The registration duty is triggered when statutory notice is provided to the offender. R.C. 2909.14 and 2909.15. The person responsible for providing the notice depends on the sentence that is imposed. R.C. 2909.14. For arson offenders who are sentenced to a term of confinement, the official in charge of the correctional institution must provide the notice before the offender is released from confinement. R.C. 2909.14(A)(1). But if the offender is not sentenced to a term of confinement, then the sentencing judge is required to notify the offender of his registration obligations at the sentencing hearing. R.C. 2909.14(A)(2). In either event, the offender must sign a form indicating that he has received and understands the notice, R.C. 2909.14(B), and the official must give a copy of the notification form to the offender, R.C. 2909.14(D).

{¶ 4} Arson offenders who have received notice are required to register annually for life with the sheriff of the county in which they reside. R.C. 2909.15(A), (D)(1), and (D)(2)(a). The law provides one limited exception to the lifetime-registration requirement. If the sentencing judge "receives a request from the prosecutor and the investigating law enforcement agency to consider limiting the arson offender's registration period," then the judge may, at the

2

sentencing hearing, limit the offender's duty to reregister to a period of "not less than ten years." R.C. 2909.15(D)(2)(b). That last provision, which we will call the "reduced-registration provision," is the portion of the law being challenged in this case.

## II. Daniel pleads guilty to arson

{¶ 5} Tyree Daniel was among a group of people who set fire to a building in Toledo. He supplied the lighter fluid and a lighter, and he was caught on video dousing the building's door with lighter fluid. For his part in the crime, Daniel was indicted on two counts of aggravated arson, felonies of the first and second degree. He negotiated a deal with the state under which he pleaded guilty to a single count of arson, a felony of the fourth degree, *see* R.C. 2909.03(B)(1).

{¶ 6} When it came time for sentencing, Daniel challenged the constitutionality of the reduced-registration provision. He relied on a decision of the Fourth District Court of Appeals, *State v. Dingus*, 2017-Ohio-2619, 81 N.E.3d 513 (4th Dist.), which held that by authorizing a trial court to reduce an offender's default lifetime-registration period only upon the request of the prosecutor and the investigating law-enforcement agency, the statute permitted improper executive-branch influence in the judicial realm and thus violated the separation-of-powers doctrine, *id.* at ¶ 31-33. Daniel asked the trial court to find the provision unconstitutional and to consider reducing his registration period, even if the state did not request a reduction.

{¶ 7} Noting that statutes are afforded a strong presumption of constitutionality, the court overruled Daniel's challenge. The state did not request a reduced registration period, so the trial court notified Daniel of his obligation to register as an arson offender for life. Additionally, Daniel signed a form titled "Notice of Duties to Register as an Arson Offender," which outlined his statutory registration requirements. Finally, the trial court sentenced Daniel to three years of community control and ordered him to serve 60 days in jail.

{¶ 8} Daniel appealed, arguing that the reduced-registration provision unconstitutionally infringed on the judicial power to impose a criminal sentence. 2022-Ohio-1348, 188 N.E.3d 671, ¶ 7. The court of appeals disagreed. It concluded that "because the arson registration statute is not punitive, its registration requirements do not constitute an aspect of a criminal sentence." *Id.* at ¶ 19. And even assuming, arguendo, that the registration requirement was part of the sentence, the court found no separation-of-powers problem because "the statute puts into place, rather than infringes upon, the judiciary's authority to sentence a defendant to a reduced arson registration period." *Id.* at ¶ 22. Recognizing that its decision was in conflict with the Fourth District's decision in *Dingus*, the Sixth District certified the following conflict question to this court: "Does R.C. 2909.15(D)(2)(b) unconstitutionally violate the doctrine of separation of powers?" 2022-Ohio-1348 at ¶ 30.

{¶ 9} We accepted jurisdiction to answer that question and resolve the conflict. 167 Ohio St.3d 1466, 2022-Ohio-2490, 191 N.E.3d 436.

### III. The separation-of-powers doctrine

#### A. The division of powers

{¶ 10} The Ohio Constitution—like its federal counterpart—allocates power to three distinct branches of government. The General Assembly possesses the "legislative power of the state." Ohio Constitution, Article II, Section 1. The governor holds the "supreme executive power of this state." Article III, Section 5. And the courts exercise the "judicial power of the state." Article IV, Section 1.

{¶ 11} We have explained that the doctrine of separation of powers is inherent in the constitutional provisions distributing power among the three branches. *See State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 55; *State v. Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790, 864 N.E.2d 630, ¶ 22. The doctrine ensures that "powers properly belonging to one of the departments [are not] directly and completely administered by either of the

other departments" and that no department possesses "an overruling influence over the others." *State ex rel. Bryant v. Akron Metro. Park Dist. for Summit Cty.*, 120 Ohio St. 464, 473, 166 N.E. 407 (1929).

{¶ 12} Despite the absence of an express "distributive clause in the Constitution of Ohio," this court has long recognized as true "that each of the three grand divisions of the government must be protected from encroachments by the others, so far that its integrity and independence may be preserved," *Fairview v. Giffee*, 73 Ohio St. 183, 187, 76 N.E. 865 (1905). Importantly, though, "the separate powers were not intended to operate with absolute independence." *United States v. Nixon*, 418 U.S. 683, 707, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). " 'While the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government.' " *Id.*, quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring). As James Madison explained, the division of power among the legislative, executive, and judicial branches does not mean that the branches " 'ought to have no *partial agency* in, or no *controul* over, the acts of each other.' " (Emphasis original in The Federalist No. 47.) *Mistretta v. United States*, 488 U.S. 361, 380-381, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), quoting The Federalist No. 47, at 299 (J. Cooke Ed.1961). Instead, the separation-of-powers doctrine provides that " 'where the *whole* power of one department is exercised by the same hands which possess the *whole* power of another department, the fundamental principles of a free constitution are subverted.' " (Emphasis original in The Federalist No. 47.) *Mistretta* at 381, quoting The Federalist No. 47, at 299.

### B. The judicial power

{¶ 13} The question in this case is whether the statutory scheme impermissibly allows the executive branch to infringe upon an area that our Constitution has placed in the sole province of the judiciary. Thus, it is necessary

5

to outline the contours of the judicial power.

{¶ 14} What constitutes the judicial power within the meaning of the Ohio Constitution "is to be determined in the light of the common law and of the history of our institutions as they existed anterior to and at the time of the adoption of the constitution." *State ex rel. Atty. Gen. v. Harmon*, 31 Ohio St. 250, 258 (1877). At its core, the judicial power is "to hear and determine a controversy between adverse parties, to ascertain the facts, and, applying the law to the facts, to render a final judgment." *Giffee* at 190. It includes "the ultimate authority to render definitive interpretations of the law." *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, __ Ohio St.3d __, 2022-Ohio-4677, __ N.E.3d __, ¶ 33. Thus, "[i]t is the province of judges to determine what is the law upon existing cases" and "to decide private disputes between or concerning persons." *Merrill v. Sherburne*, 1 N.H. 199, 204 (1818); *see also Marbury v. Madison*, 5 U.S. 137, 177, 2 L.Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is"); *Stanton v. Tax Comm.*, 114 Ohio St. 658, 672, 151 N.E. 760 (1926) ("the primary functions of the judiciary are to declare what the law is and to determine the rights of parties conformably thereto").

{¶ 15} Of course, the power to decide cases and render judgments includes the power to determine guilt or innocence in a criminal case and pronounce a sentence. *See State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 648, 4 N.E. 81 (1885) ("The trial, verdict, and sentence provided by law are judicial functions"). We have therefore explained that "[t]he determination of guilt in a criminal matter and the sentencing of a defendant convicted of a crime are solely the province of the judiciary." *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 136, 729 N.E.2d 359 (2000).

{¶ 16} Yet the judiciary does not possess exclusive control in the realm of criminal sentencing. Instead, "the sentencing function long has been a peculiarly

shared responsibility among the Branches of Government and has never been thought of as the exclusive constitutional province of any one Branch." *Mistretta*, 488 U.S. at 390, 109 S.Ct. 647, 102 L.Ed.2d 714. With respect to criminal sentencing, the judicial power is the power to impose a sentence authorized by law. *See Peters* at 647. The power to prescribe the punishment for a crime belongs to the legislature. *See id.* ("it is among the admitted legislative powers to define crimes, to prescribe the mode of procedure for their punishment, [and] to fix by law the kind and manner of punishment"); *In re Victor*, 31 Ohio St. 206, 208 (1877) ("The legislature has plenary power to prescribe the punishment of crimes and offenses"). The legislature likewise controls "the scope of judicial discretion with respect to a sentence." *Mistretta* at 364. And executive-branch officials routinely make decisions that affect sentencing exposure and the duration of the sentence served through the exercise of the prosecutorial, parole, and pardon powers. *See id.* at 364-365; *State v. Pierce*, 163 Vt. 192, 196-197, 657 A.2d 192 (1995); *United States v. Huerta*, 878 F.2d 89, 92-93 (2d Cir.1989).

{¶ 17} On that understanding, we proceed to consider the claim in this case. Our review begins with the presumption that the law is constitutional and that we will refuse to uphold it only if it is clearly incompatible with the Constitution. *See Cincinnati, Wilmington & Zanesville RR. Co. v. Clinton Cty. Commrs.*, 1 Ohio St. 77, 82-83 (1852). We find no incompatibility here.

## IV. The executive-branch recommendation does not invade the judicial power

{¶ 18} Daniel asserts that the reduced-registration provision impermissibly intrudes upon the judicial realm in two ways: first, by infringing on the judicial power to impose a sentence, and second, by limiting judicial review of a sentence. We address each argument in turn.

### A. Infringement on the judicial power to impose a sentence

#### 1. The registration requirement is not part of the criminal sentence

**{¶ 19}** Daniel's central claim is that by making a shortened registration period contingent upon the recommendation of executive-branch officials, the reduced-registration provision invades the court's sentencing authority. But that presupposes that the registration duty is part of the criminal sentence. It is not.

**{¶ 20}** A judge does not sentence an offender to a registration period. Instead, the lifetime-registration requirement arises by operation of law, and an offender is required to register upon being notified of the requirement. R.C. 2909.15(A) ("Each arson offender who has received notice * * * shall register"). Who provides the notice depends on the offender's sentence. If the offender is sentenced to a term of confinement, then the notice is provided by "the official in charge" of the institution in which the offender is confined. R.C. 2909.14(A)(1). But if the offender is not sentenced to a term of confinement, the judge provides the notice at the time of sentencing. R.C. 2909.14(A)(2).

**{¶ 21}** The duty to register is not part of the criminal sentence. A "sentence" is "the sanction or combination of sanctions *imposed by the sentencing court* on an offender who is convicted of or pleads guilty to an offense." (Emphasis added.) R.C. 2929.01(EE). Mandatory registration is not "imposed by the sentencing court," *id.* Rather, the court's role is limited to *notifying* a subset of offenders (those initially placed on community control) of the duty to register.

**{¶ 22}** Of course, if the prosecutor and the investigating law-enforcement agency ask the trial court to reduce the offender's registration term, the court must rule on that request. But that does not make the court's order granting or denying the request a part of the criminal sentence. Indeed, it's hard to see how a shortened registration period would amount to a criminal sanction when a lifetime-registration period does not.

**{¶ 23}** In arguing that the registration requirement is part of his sentence,

Daniel looks to this court's decision in *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108. At issue in *Williams* was whether the Ohio Constitution's prohibition on retroactive laws (Article II, Section 28) precluded Ohio's sex-offender-registration scheme, R.C. Chapter 2950 (the "Adam Walsh Act"), from being applied to offenders who committed their crimes before the law's effective date. *Williams* at ¶ 4-7. The question whether the law was unconstitutionally retroactive turned on whether it was remedial or punitive. *Id.* at ¶ 10-21; *see also State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 32. The *Williams* court concluded that the sex-offender-registration scheme was "so punitive that its retroactive application [was] unconstitutional." *Id.* at ¶ 21. In other words, the court concluded that "when the various parts of the scheme were considered together, there was enough of a punitive aspect that the scheme could not be applied retroactively." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 20 (construing *Williams*).

**{¶ 24}** Daniel contends that the arson-offender-registration scheme is punitive under the analysis in *Williams*. And if the scheme is punitive, he presumes, the registration requirements must be part of the offender's criminal sentence. But the question whether a law is "punitive" (or "substantive") in the sense that it impairs vested rights and cannot constitutionally be applied to conduct predating the law is entirely separate from the questions whether the law's requirements are part of the criminal sentence or implicate the judge's sentencing power.

**{¶ 25}** Indeed, we have never said that this court's holding in *Williams* that the Adam Walsh Act was "punitive" created a separation-of-powers problem. Rather, this court has held only that a limited portion of that act violated the separation of powers, because it enabled the attorney general to reclassify offenders who had already been classified by a court order. *See State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 67 (lead opinion); *id.* at ¶ 68 (O'Donnell, J., concurring in part and dissenting in part). We characterized this as

unlawfully permitting the executive branch to reopen final judgments. *Id*. at ¶ 57, citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-219, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995).

{¶ 26} In short, the duty to register as an arson offender does not arise by judgment of a court; it attaches as a matter of law. It is therefore not part of the criminal sentence imposed by the judge.

2. Even if arson-offender registration is part of the criminal sentence, the legislature has authority to limit a court's discretion with respect to that sentence

{¶ 27} Regardless, even if we were to conclude that the arson-offender-registration obligations are part of the offender's sentence, the reduced-registration provision still would not violate the separation-of-powers doctrine. That is because the legislature is vested with authority to prescribe criminal sentences.

{¶ 28} Courts have no inherent discretion with respect to the composition of a criminal sentence. *See Toledo Mun. Ct. v. State ex rel. Platter*, 126 Ohio St. 103, 109-111, 184 N.E. 1 (1933). "Laws providing for definite sentences and laws providing the courts with discretion in setting the penalty within well-defined limits have both been upheld as within the power of the General Assembly to enact." *State v. Morris*, 55 Ohio St.2d 101, 112, 378 N.E.2d 708 (1978); *see also Victor*, 31 Ohio St. at 208.

{¶ 29} As we explained long ago:

> In many instances the legislature fixes the penalty, as, for instance, in murder in the first and second degree, and this has never been regarded as an infringement of the judicial power. The law might fix a definite sentence for each crime without such infringement. The [law] vests in the courts in some instances a discretion between a maximum and minimum penalty, or between alternative penalties; but this discretion might be taken away

10

without infringing upon the exclusive power of the judiciary.

*Peters*, 43 Ohio St. at 647, 4 N.E. 81.

{¶ 30} It is wholly within the legislative power to determine what consequences attach to a conviction for a crime—the legislature may grant the court discretion in selecting from the consequences provided by law, or it may remove the court's discretion entirely and mandate certain consequences. The legislature does this all the time: it establishes mandatory prison terms (*see, e.g.*, R.C. 2929.14(B)); it requires driver's license suspensions (*see, e.g.*, R.C. 4511.19); it imposes prohibitions on owning guns (*see, e.g.*, R.C. 2923.13) and on where offenders may live (*see, e.g.*, R.C. 2950.034); and so on.

{¶ 31} Plainly, then, the General Assembly has the power to set the manner and duration of an offender's registration obligations. The legislature may grant the court discretion to determine the duration of the offender's duty to register or it may affix a mandatory registration term as a matter of law. That it has, in this instance, chosen to permit the court to reduce the registration period in some cases and not others is of no consequence for separation-of-powers purposes.

{¶ 32} The question is whether making an executive-branch recommendation the triggering mechanism for the court to have discretion to reduce an offender's registration period changes anything. Daniel maintains that it does. He looks to *Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790, 864 N.E.2d 630, for support.

{¶ 33} *Sterling* involved former R.C. 2953.82, Sub.S.B. No. 11, 150 Ohio Laws, Part IV, 6498, 6522, a postconviction-DNA-testing statute. Under that statute, an inmate who had pleaded guilty or no contest to a felony was permitted to file an application for DNA testing in the court of common pleas, if the inmate met certain other criteria. Former R.C. 2953.82(A). But the statute provided, "If the prosecuting attorney disagrees that the inmate should be permitted to obtain

DNA testing under this section, the prosecuting attorney's disagreement is final and is not appealable by any person to any court, and no court shall have authority, without agreement of the prosecuting attorney, to order DNA testing regarding that inmate and the offense or offenses for which the inmate requested DNA testing in the application." Former R.C. 2953.82(D).

{¶ 34} This court held that the provision allowing the prosecutor to prevent the court from considering the inmate's application for DNA testing violated the separation-of-powers doctrine. *Sterling* at ¶ 35. We noted that the results of DNA testing ultimately bear on the question of the defendant's guilt in a criminal matter. *Id.* at ¶ 34. We therefore concluded that "those portions of the statute that make the prosecuting attorney's disagreement final, and not appealable to any court, and that deprive the court of its ability to act without the prosecutor's agreement *interfere with the court's function in determining guilt, which is solely the province of the judicial branch of government*." (Emphasis added.) *Id.* at ¶ 35.

{¶ 35} Daniel observes that the provision at issue in this case is similar to the DNA-testing provision at issue in *Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790, 864 N.E.2d 630, because both provisions require a prosecutor's agreement as a "catalyst" for the judge to exercise discretion. The Fourth District employed similar logic regarding the arson-offender-registration scheme, concluding that because the prosecutor and the investigating law-enforcement agency "effectively decide which registration periods can be reviewed by the trial court," *Dingus*, 2017-Ohio-2619, 81 N.E.3d 513, at ¶ 31, those executive-branch officials "have an 'overruling influence' over the trial court," *id.*, quoting *Sterling* at ¶ 23.

{¶ 36} But the fact that court action is contingent on a prosecutor's request isn't what the court in *Sterling* found problematic. Instead, the court was concerned that the DNA-testing statute allowed the prosecutor to control the court's ability to decide a matter that implicated the defendant's guilt. *See Sterling* at ¶ 34. Unlike the statute at issue in *Sterling*, a recommendation for a reduced arson-offender-

registration period does not infringe upon the court's power to decide whether the defendant is guilty of a crime.

{¶ 37} As the Sixth District explained, the reduced-registration provision "*establishes* an aspect of judicial discretion that is triggered by, and becomes available as a result of, the executive branch recommendation. Thus, the statute puts into place, rather than infringes upon, the judiciary's authority to sentence a defendant to a reduced arson registration period." (Emphasis in original.) 2022-Ohio-1348, 188 N.E.3d 671, at ¶ 22. In other words, by requiring an executive-branch recommendation, the General Assembly "merely circumscribes the discretionary power that it grants to judges to [permit] a reduced registration period." *Id.*

{¶ 38} In sum, the separation-of-powers doctrine does not require that courts be afforded discretion in imposing a sanction prescribed by the legislature. The fact that the legislature has authorized courts to exercise discretion in cases in which the prosecutor initiates a request does not require that the courts have the same discretion in every case. We therefore find no basis to conclude that the reduced-registration provision infringes upon the judicial power to impose a sentence.

### B. Limiting appellate review of a judicial decision

{¶ 39} Daniel also asserts that the reduced-registration provision violates the judicial power of appellate review by giving executive-branch officials "the power to make a judicial decision that prejudices the defendant without any review from the courts."

{¶ 40} We have already explained that the arson-offender-registration provisions are not part of the criminal sentence. But even if the duty to register were part of the criminal sentence, Daniel's argument fails because there exists no generalized right to judicial review of discretionary executive-branch actions. A prosecutor's decision whether to recommend a reduced registration period is not a

13

judicial act. Rather, that decision falls within the scope of powers routinely exercised by executive-branch officials in criminal cases.

{¶ 41} In *Pierce*, 163 Vt. 192, 194-197, 657 A.2d 192, the Vermont Supreme Court rejected a separation-of-powers challenge to a statute that permitted a trial court to defer a defendant's sentence only upon the request of the prosecutor. In holding that there was no separation-of-powers problem, the court noted that many traditional executive-branch functions have a far more substantial influence over sentencing outcomes:

> [V]arious offices of the executive branch possess powers that can have a considerable impact on the sentence imposed in any given criminal case. The prosecutor determines the extent of a suspect's sentencing exposure by deciding whether and what charges will be brought, whether to plea bargain, and what sentence to recommend. * * * Parole officials may release individual prisoners before the expiration of the judicially imposed term of imprisonment. * * * The Governor has the unreviewable power to grant pardons in most cases.

*Id.* at 196; *see also Billis v. State*, 800 P.2d 401, 426 (Wyo.1990) (prosecutor's decision whether a defendant is given the opportunity to complete probation while deferring a judgment of conviction was akin to other traditional executive-branch powers, including the power "to file charges, to reduce charges, to plea bargain, and to dismiss charges").

{¶ 42} Federal circuit courts have employed the same analysis when evaluating similar claims. In *Huerta*, 878 F.2d 89, the Second Circuit Court of Appeals considered a statute that authorized a judge to impose a sentence below the statutory minimum based on the defendant's cooperation with the government, but

only if the government requested a reduced sentence. *Id*. at 91-92. The court held that conditioning the trial judge's discretion on an executive-branch request did not transform the request into a judicial act. *Id*. The court pointed out that the authority granted to the prosecutor was "considerably more limited than other means by which the Executive has traditionally exercised power over the sentences defendants ultimately receive." *Id*. at 92. The authority "to decide whether or not to prosecute, and on what charges, and to determine the date of parole is," the court explained, "far more intrusive on sentencing decisions than the limited power afforded by [the downward-departure sentencing provision]." *Id*. The court therefore determined that because "[t]he power to decide the motion and to pronounce the sentence * * * remain with the court," the government's decision whether to move for a sentence below the statutory minimum did not amount to an "adjudication." *Id*. Other federal circuit courts have reached the same conclusion. *See, e.g.*, *United States v. Ayarza*, 874 F.2d 647, 653 (9th Cir.1989); *United States v. Grant*, 886 F.2d 1513, 1513-1514 (8th Cir.1989); *United States v. Burton*, 6th Cir. No. 93-6272, 1994 WL 421733, *2-3 (Aug. 11, 1994).

{¶ 43} Daniel once more leans into this court's decision in *Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790, 864 N.E.2d 630, for support. He says that this court found unconstitutional the statute making the prosecutor's opposition to a DNA-testing application determinative because the statute explicitly prohibited appellate review of the prosecutor's decision. But again, our discussion of the lack of appellate review in *Sterling* was tied to this court's determination that DNA testing involved the judicial power "to determine guilt in a criminal matter," and thus the prosecutor's ability to reject a DNA-testing application amounted to a delegation of "judicial authority," *id*. at ¶ 34; *see also id.* at ¶ 1.

{¶ 44} Conversely, the decision whether to recommend a reduced registration period is not judicial in nature. "The judiciary exercises the power of adjudication and imposition of sentence when it enters final judgment of

conviction, but not before. The prosecution exercises its prosecution power before entry of final judgment, but not after." *Billis*, 800 P.2d at 426. In this respect, a prosecutor's decision whether an offender should be considered for a reduced registration period fits comfortably within the scope of discretionary decisions that prosecutors are authorized to make in every criminal case.

{¶ 45} Moreover, the fact that an executive-branch decision is not subject to appellate review does not create a separation-of-powers problem. As the United States Supreme Court has explained, such decisions are "particularly ill-suited to judicial review" and " 'generally rest[] entirely in [the officer's] discretion,' " subject of course to statutory and constitutional constraints. *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

### V. Conclusion

{¶ 46} Because we find no separation-of-powers violation within Ohio's arson-offender-registration scheme, we answer the certified-conflict question in the negative and affirm the judgment of the Sixth District Court of Appeals.

Judgment affirmed.

KENNEDY, C.J., and DETERS, J., concur.

STEWART, J., concurs, with an opinion.

BRUNNER, J., concurs in part and dissents in part, with an opinion joined by DONNELLY, J.

FISCHER, J., dissents, with an opinion.

_____

**STEWART, J., concurring.**

{¶ 47} I agree with the majority opinion that R.C. 2909.15(D)(2)(b) does not violate the separation-of-powers doctrine and concur in that opinion in full; though I believe the statute walks a fine line. I write separately because while the statute may be constitutional, it is oblique and primed for abuse and indiscriminate

16

application with no recourse. The statute provides no guidance for anyone involved with its application—not the prosecutor, the investigating law-enforcement agency, or the court—in determining when and by how much to reduce a defendant's arson-offender-registration period. It is also primed to trigger equal-protection challenges from defendants convicted of arson.

{¶ 48} What R.C. 2909.15(D)(2)(b) clearly does is give prosecutors and law enforcement the exclusive ability to determine when a trial court has discretion to limit an arson offender's registration requirement to a period of less than the rest of the offender's life. But the statute provides no guidance or criteria whatsoever regarding which offenders are worthy of a request by the prosecutor and law enforcement for a reduced registration period. If such a request is made to the trial court, what criteria should the court consider when deciding whether to reduce the offender's registration requirement to a definite period of not less than ten years? And if the court decides to reduce the registration period, what factors should be used to determine the appropriate registration period? So not only does R.C. 2909.15(D)(2)(b) invite indiscriminate use of the registration-period-reduction provision, or worse, afford the opportunity for a reduced registration period to only offenders who have favor with the prosecution or law enforcement, the statute also promotes the creation of a wide range of registration periods when courts grant the requests.

{¶ 49} When considering whether an arson offender's registration period should be reduced, the interests of the state, which are represented by the prosecutor and the investigating law-enforcement agency, are important and should be considered by the trial court. *See id.* But by placing these entities in a gatekeeping role and allowing them to exclusively determine who will receive the benefit of a reduction request, R.C. 2909.15(D)(2)(b) enables these entities to avoid scrutiny of their interests altogether and to become the de facto determiners as to who will be required to register for life and who will not. Such scrutiny serves a critical role,

however, because the risk that an offender will commit a new offense varies from offender to offender.

{¶ 50} R.C. 2909.15(D)(2)(b) allows a trial court to exercise its discretion to limit the registration period to not less than ten years only at the request of the prosecutor *and* the investigating law-enforcement agency. This framework raises several practical and substantive issues:

1. Why must the prosecutor and the investigating law-enforcement agency both request a reduction before the trial court can consider a reduction?

2. What is the policy behind not allowing the defendant to request a reduction?

3. Which defendants will be afforded the opportunity of having their registration periods reduced and why, and how does the statute ensure that prosecutors, law enforcement, and the courts are even-handed in making and reviewing reduction requests when the statute does not provide any guidance on factors to consider?

{¶ 51} One of the main problems with R.C. 2909.15(D)(2)(b) is its potential to cause confusion. The statute requires that a request for a limited registration period be made by the prosecutor *and* the investigating law-enforcement agency; but the former normally represents the interests of the latter in court in criminal proceedings. If the prosecutor and an arson offender jointly agree to ask the trial court to impose a reduced arson-offender-registration period, may the prosecutor solicit consent from the investigating law-enforcement agency under the statute? If so, what are the procedures for doing so?

{¶ 52} Also, and more concerning, a lifetime-registration requirement is not appropriate in every case. Some offenders may be able to present a compelling case that a shorter registration period is appropriate but will never have the opportunity to do so unless the prosecutor and the investigating law-enforcement agency open the door to such an argument by jointly requesting that the court consider a reduction. The registration scheme does not describe any interests that

lifetime registration is designed to protect or any interests that prosecutors, law enforcement, and the courts should consider when deciding whether to request or grant a reduced registration period. Under the statute, the prosecutor and the investigating law-enforcement agency do not even need to have a reason for a reduction request, and no factors are set forth to trigger a request to the trial court— for instance, a provision supporting a request based on a defendant's substantial assistance to the government like that contemplated under the federal-sentencing-deviation law that the majority opinion cites in support of its analysis, *see* 18 U.S.C. 3553(e) ("Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence *so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense*" [emphasis added]).[1] Notably, this federal provision also mandates that a sentence imposed under the provision be in accordance with specific guidelines. *See id.* Here, there are no such guidelines or limitations. The registration scheme sets forth no factors whatsoever to guide prosecutors and law enforcement in determining whether to request a reduced registration period from the court. This lack of guidance opens the door to all kinds of abuses and allows prosecutors and law enforcement to base their reduced-registration decisions on totally irrelevant factors, instead of ensuring that the decisions are rooted in public-safety considerations or some other compelling governmental interest.

---

1. The difference in the structure of the federal statute, 18 U.S.C. 3553(e), and Ohio's statute, R.C. 2909.15(D)(2)(b), lends to the confusion on the separation-of-powers issue. R.C. 2909.15(D)(2)(b) implies that there will be judicial discretion from the start, as it begins, "The judge may limit an arson offender's duty to reregister." That provision is then curtailed by the triggering clause in the second half of the sentence, which states, "[I]f the judge receives a request from the prosecutor and the investigating law enforcement agency." But 18 U.S.C. 3553(e) flips this structure and begins by describing the government's authority rather than the court's discretion, stating, "Upon motion of the Government, the court shall have the authority * * *."

**{¶ 53}** Relevant considerations might include the defendant's role in the arson offense, the defendant's risk of recidivism, whether anyone was physically injured in the fire, or other considerations, but the law is silent on such factors. It makes sense that the prosecutor, the investigating law-enforcement agency, and the court would be more inclined to require a lifetime-registration period for a repeat arson offender who set a fire himself and in the process seriously harmed another person or who set a fire in a busy residential area, but not for a first-time arson offender who only provided the tools used to start a fire and did not injure another person or who set a fire in an abandoned commercial building. Yet the law does not require such basic considerations or guide the decision-makers in any way. The existing procedure all but ensures that prosecutors, law enforcement, and the courts will make random and ad hoc decisions on reduced-registration questions. While these entities may take the factors listed above and other relevant factors into account, there is no provision requiring or even suggesting that they do so.

**{¶ 54}** Combine this lack of guidance with the fact that, as both dissenting opinions point out, a defendant cannot meaningfully appeal the prosecutor's or law-enforcement agency's decision not to request a reduction and it becomes clear that the law not only sets prosecutors and law enforcement as the gatekeepers to obtaining a reduced registration period but also circumvents any scrutiny of their decisions in that regard. With no structured guidance and no way to meaningfully review a decision whether to request a reduced registration period, the law provides for no transparency regarding which cases prosecutors and law enforcement will consider for a registration-period reduction.

**{¶ 55}** There is no logical reason for R.C. 2909.15(D)(2)(b) to permit a one-sided and potentially biased decision regarding registration-period reduction. Instead, there should be an equal opportunity for the state and the defense to propose or contest a reduction. This is the way that most of our sentencing scheme operates, and there is no apparent reason why R.C. 2909.15(D)(2)(b) deviates from

20

that structure. Ohio is one of only a few states that have an arson-offender registry and is the only state that has this registration-reduction framework. *Compare* R.C. 2909.15 *with* Cal.Penal Code 457.1(b)(2) (lifetime registration required), 730 Ill.Comp.Stat. 148/45 (ten-year registration), La.Rev.Stat.Ann. 15:562.6 (ten years for first offense and lifetime for subsequent offenses), and Mont.Code Ann. 46-23-506(2) (ten-year registration period or lifetime registration if the offender fails to register or is convicted of another felony while subject to registration, and the offender may petition for relief from duty to register). There is also no discussion in the legislative history of the statute regarding why this procedure was established or what purpose it was meant to serve. *See generally* Legislative Service Commission Final Analysis of Am.Sub.S.B. No. 70, available at http://archives.legislature.state.oh.us/lsc/analyses129/12-sb70-129.pdf (accessed Oct. 17, 2023) [https://perma.cc/EPK3-QQKH].

**{¶ 56}** Finally, R.C. 2909.15(D)(2)(b) states that a trial court may deviate from imposing a lifetime-registration period and instead impose a registration period of not less than ten years, but the statute does not indicate a range of acceptable registration periods or provide a way to navigate that divide. For example, for a 75-year-old defendant, there may not be much of a difference between a lifetime-registration period and a 30-year registration period, but such a difference would surely be meaningful to a 20-year-old defendant. The existing scheme allows courts to create an illusory benefit in that a court may impose less than a lifetime-registration period; but again, a 30-year-registration period for a 75-year-old defendant is not meaningfully different from a lifetime-registration period. While R.C. 2909.15(D)(2)(b) grants the courts discretion (in narrow circumstances), it fails to provide any framework to assist the courts in setting a registration period that is measured and equitable.

**{¶ 57}** Given the problems with R.C. 2909.15 discussed above, revising the statute would go a long way toward strengthening its utility. For example, the

revised statute could establish a range of registration periods, with the trial court having discretion to select the period within the range that it finds appropriate for a given offender based on relevant factors (such as the defendant's arson history, the defendant's role in the arson offense, the location of the fire, and whether anyone was physically harmed). To ensure that the interests of the state and the offender are adequately represented, the revised statute could also require the trial court to hear from the prosecutor *and* the offender on the appropriate registration period.[2]

{¶ 58} These revisions to the law would level the playing field at the trial-court level, as both the state and the offender would have a chance to request a registration-period reduction based on the relevant facts of the case. The revised statute would also then give the offender an opportunity to meaningfully appeal the court's decision, if necessary. As stated above, although R.C. 2909.15(D)(2)(b) does not violate the doctrine of separation of powers in the traditional sense, it certainly encroaches on such a violation and causes a host of serious issues for all the parties involved. So while I reluctantly concur in the majority's decision to affirm the decision of the Sixth District Court of Appeals, I conclude that R.C. 2909.15(D)(2)(b)'s utility is questionable at best and has no efficacious value at worst.

———————————

**BRUNNER, J., concurring in part and dissenting in part.**

**INTRODUCTION**

{¶ 59} A key feature of the doctrine of separation of powers is that except as provided by the constitutional system of checks and balances, no branch of the government " 'ought to possess directly or indirectly an overruling influence over

———————————

2. While R.C. 2909.15(D)(2)(b) does not expressly prohibit a trial court from hearing arguments from both sides or entertaining a request to reduce the registration period based on a joint recommendation, *see State v. Carlisle*, 2019-Ohio-4651, 136 N.E.3d 570, ¶ 2 (11th Dist.), the statute should require that the court hear from both sides on the issue.

the others,' " *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 44 (lead opinion), quoting *State ex rel. Bryant v. Akron Metro. Park Dist. for Summit Cty.*, 120 Ohio St. 464, 473, 166 N.E. 407 (1929). In enacting Ohio's arson-offender-registration law, the Ohio General Assembly was free to make an arson offender's registration requirement a lifetime requirement. It also was free to provide a sentencing court with discretion to alter the period for which registration is required. But what it could not do, but did, was provide a court with discretion that the court can exercise only when the executive branch permits the court to exercise it—by approval of the prosecutor and the investigating law-enforcement agency. *See* R.C. 2909.15(D)(2)(b).

**{¶ 60}** R.C. 2909.15(D)(2)(b) violates the separation-of-powers doctrine. Because the majority concludes otherwise, I respectfully dissent in part.

## ANALYSIS

### Standard of Review for Facial Challenges

**{¶ 61}** "[A] facial constitutional challenge requires proof beyond a reasonable doubt." *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 20, citing *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 21. But the beyond-a-reasonable-doubt standard "is an evidentiary standard that is poorly suited to the legal question whether a legislative enactment comports with the Constitution." S*tate v. Grevious*, __ Ohio St.3d __, 2022-Ohio-4361, __ N.E.3d __, ¶ 48 (DeWine, J., concurring in judgment only). And "while the beyond-reasonable-doubt standard is something that we have rotely pasted into constitutional opinions, there is no indication that we actually use it." *Id.* at ¶ 63 (DeWine, J., concurring in judgment only). I would advise parties—and courts—to avoid reciting the inapposite beyond-a-reasonable-doubt standard when considering constitutional challenges and to instead use the standard that has been applied for almost 50 years and reflects the reality of such review:

The question of the constitutionality of every law being first determined by the General Assembly, every presumption is in favor of its constitutionality, and it must clearly appear that the law is in direct conflict with inhibitions of the Constitution before a court will declare it unconstitutional.

*Ohio Pub. Interest Action Group, Inc. v. Pub. Util. Comm.*, 43 Ohio St.2d 175, 331 N.E.2d 730 (1975), paragraph four of the syllabus.

**{¶ 62}** Regardless of whether the phrase "beyond a reasonable doubt" is invoked in considering a facial constitutional challenge, it remains true that

[f]acial challenges to the constitutionality of a statute are the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid. *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). If a statute is unconstitutional on its face, the statute may not be enforced under any circumstances. When determining whether a law is facially invalid, a court must be careful not to exceed the statute's actual language and speculate about hypothetical or imaginary cases. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008). Reference to extrinsic facts is not required to resolve a facial challenge. *Reading* [*v. Pub. Util. Comm.*, 109 Ohio St.3d 193, 2006-Ohio-2181, 846 N.E.2d 840,] ¶ 15.

*Wymsylo* at ¶ 21. As always, " '[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the

24

language and design of the statute as a whole.' " *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, 170 N.E.3d 842, ¶ 18, quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). Questions of statutory interpretation are reviewed de novo. *State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶ 20.

### The Arson-Offender Registry

{¶ 63} As the majority opinion notes, the arson-offender-registration scheme enacted through 2012 Am.Sub.S.B. No. 70 established a lifetime-registration requirement, with one exception:

> (2)(a) Except as provided in division (D)(2)(b) of this section, the duty of an arson offender or out-of-state arson offender to reregister annually shall continue until the offender's death.
>
> (b) *The judge may limit an arson offender's duty to reregister at an arson offender's sentencing hearing to not less than ten years if the judge receives a request from the prosecutor and the investigating law enforcement agency to consider limiting the arson offender's registration period.*

(Emphasis added.) R.C. 2909.15(D)(2)(a) and (b).

### Separation of Powers

{¶ 64} The majority opinion recognizes that the Ohio Constitution lacks "an express 'distributive clause' " regarding the separation of governmental powers. Majority opinion, ¶ 12, quoting *Fairview v. Giffee*, 73 Ohio St. 183, 187, 76 N.E. 865 (1905). Rightly, it admits that this case concerns a question of Ohio constitutional law, which does not necessitate any analyses such as those recently employed in judicial-conservatism approaches such as originalism. Thus, the

majority opinion is clear that it is the Ohio Constitution, not the United States Constitution, that is the touchstone for our review.

{¶ 65} Since the majority opinion nevertheless mentions analysis under the United States Constitution, it should be noted that even if this case *were* centered on the United States Constitution, proper constitutional analysis of any constitutional provision, state or federal, primarily entails consideration of what the provision says and how it applies to the question before the court. *See Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167, ¶ 22; *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 14. In essence, it is the document's *words* that matter, not what was in the framers' minds at the time it was written. Thus, by considering the document's *words*, we avoid scooping up in the dig of history things from the framers' time, which included things like bloodletting being thought of as effective medicine and laws that were used to mete out pain, obscurity, and oppression, the likes of which is not tolerated today, to particular groups of people. *See, e.g.*, U.S. Constitution, Article I, Section 2, cl. 3; Fourteenth Amendment to the U.S. Constitution, Section 2; Fifteenth Amendment to the U.S. Constitution, Section 1; Nineteenth Amendment to the U.S. Constitution; Twenty-Fourth Amendment to the U.S. Constitution, Section 1. So it is on this point that I agree with the majority. It is better to avoid analysis based on the United States Constitution and thereby avoid recent styles of interpreting it through the purported views of its framers, who wrote the document in 1787 during a *secret* convention. And most accounts of the views expressed as part of the convention were written and collected well after the fact and based on a variety of sources, the accuracy and biases of which cannot reliably be known. *See generally* James H. Hutson, *The Creation of the Constitution: The Integrity of the Documentary Record*, 65 Tex.L.Rev. 1 (1986); *The Records of the Federal Convention of 1787* (Farrand Ed.1911).

**{¶ 66}** More than 20 years ago, we discussed the basis of the separation-of-powers doctrine expressed in the Ohio Constitution:

> This court has repeatedly affirmed that the doctrine of separation of powers is "implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 158-159, 503 N.E.2d 136 (1986); *State v. Warner*, 55 Ohio St.3d 31, 43-44, 564 N.E.2d 18 (1990). *See State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 475, 715 N.E.2d 1062 (1999); *State v. Hochhausler*, 76 Ohio St.3d 455, 463, 668 N.E.2d 457 (1996).
>
> "The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others." [*Bryant*], 120 Ohio St. [at] 473, 166 N.E. 407. *See also Knapp v. Thomas*, 39 Ohio St. 377, 391-392 (1883); *State ex rel. Finley v. Pfeiffer*, 163 Ohio St. 149, 126 N.E.2d 57 (1955), paragraph one of the syllabus.

*State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 134, 729 N.E.2d 359 (2000). And this principle exists not for the protection of the powers of each branch of the government for the benefit of that branch, but for the benefit of the people who rely on a government of checks and balances as a shield against arbitrary use of power. *Id.* at 135. We also discussed in *Bray* the role of the judiciary:

> In our constitutional scheme, the judicial power resides in the judicial branch. Section 1, Article IV of the Ohio Constitution. The determination of guilt in a criminal matter and the sentencing of a defendant convicted of a crime are solely the province of the judiciary. *See State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 648, 4 N.E. 81 (1885). *See also Stanton v. Tax Comm.*, 114 Ohio St. 658, 672, 151 N.E. 760 (1926) ("the primary functions of the judiciary are to declare what the law is and to determine the rights of parties conformably thereto"); *Fairview*, 73 Ohio St. [at] 190, 76 N.E. 865 ("It is indisputable that it is a judicial function to hear and determine a controversy between adverse parties, to ascertain the facts, and, applying the law to the facts, to render a final judgment").

*Id.* at 136.

{¶ 67} As enacted, the arson-offender-registration law infringes on the power of the judiciary but does not completely place the power in the hands of the executive branch to be " 'directly and completely administered by' " that branch, *id.* at 134, quoting *Bryant* at 473. Instead, there is an infringement on the juridical powers. As this court stated in *Bryant*, repeated in *Bray*, and more recently reiterated in *Bodyke*, " 'powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, *and further*[,] *none of them ought to possess directly or indirectly an overruling influence over the others*.' " (Emphasis added.) *Id.*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, at ¶ 44, quoting *Bryant* at 473; *see also Bray* at 134, quoting *Bryant* at 473. What the General Assembly did, however, as the law- and policy-enacting branch of the government, was create a mechanism that permits an Ohio court of common pleas to exercise discretion regarding the arson registry only

when the prosecutor and the investigating law-enforcement agency say that it may. This statutory mechanism—establishing the agreement of the prosecutor and the law-enforcement agency as the gate to the exercise of judicial discretion—lacks any indicia of predictability, fairness, or due process for imposing arson registration or granting relief from it. This is because it is only when prosecutorial agreement occurs, which is a standardless process, that a court may exercise its judgment regarding the registration requirements. *See* R.C. 2909.15(D)(2)(b).

**{¶ 68}** We previously considered and struck down a similar provision in *State v. Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790, 864 N.E.2d 630 (2007). At issue in *Sterling* was former R.C. 2953.82(C) and (D), Sub.S.B. No. 262, 151 Ohio Laws, Part I, 1716, 1737-1738, which required a prosecutor to opine on whether DNA testing sought by a prisoner should be allowed and prevented a trial court from ordering DNA testing without the agreement of the prosecutor. *Sterling* at ¶ 1, 14-17. We held that former R.C. 2953.82(D) impermissibly "confin[ed] the exercise of judicial authority to those instances where the prosecutor agrees with the application." *Id.* at ¶ 34. The provision violated the Constitution because it "deprive[d] the court of its ability to act without the prosecutor's agreement [and thereby] interfere[d] with the court's function in determining guilt, which is solely the province of the judicial branch of government." *Id.* at ¶ 35. Here, similarly, we consider a provision by which certain discretionary powers to impose arson registration are taken from the trial court and handed to the executive branch, by conditioning the court's ability to exercise its discretion on the agreement of the prosecutor and law enforcement. *See* R.C. 2909.15(D)(2)(b). The provision at issue here differs not at all from that in *Sterling* in its fundamental violation of the separation of powers.

**{¶ 69}** In *Sterling*, we also found it significant that the prosecutor's decision was "final and not appealable by any person to any court." *Id.* at ¶ 34. Here, too (though it is not explicitly stated in the law as it was in the statute at issue in

*Sterling*), there is no effective way for an arson offender to appeal a decision of the prosecutor and the investigating law-enforcement agency to decline to "request" that the trial court "consider limiting the arson offender's registration period," R.C. 2909.15(D)(2)(b), i.e., unless the trial court were to require the prosecutor and law enforcement to conduct their decision-making on the record and give reasons for their decision. There is no such requirement. Even then, however, the failure by either the prosecutor or law enforcement to agree would still violate the separation-of-powers doctrine, because the accuser would then have become the judge.

{¶ 70} Finally, even if an arson offender's appeal were based on the failure of the prosecutor and law enforcement to agree as to whether the trial court should consider limiting the registration period, there is nothing reviewable about an agreement between the prosecutor and law enforcement that results in detriment to a third party—the arson offender. No court is accorded jurisdiction by the legislature to review such an agreement. And when the prosecutor and law enforcement fail to make any request, there is no agreement to contest on appeal. While technically, a defendant could file an appeal of the trial court's decision imposing a lifetime arson-offender-registration period, that appeal would be doomed by the fact that in the absence of a request by the prosecutor and law enforcement for the trial court to consider limiting the registration period, the court is without discretion under the statute to do anything other than impose a lifetime-registration requirement. *See id.*

**Severability**

{¶ 71} The Revised Code instructs:

If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the

invalid provision or application, and to this end the provisions are severable.

R.C. 1.50. We have previously explained how we determine whether severing a provision is appropriate:

> Three questions are to be answered before severance is appropriate. " '(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?' "

*State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 95, *abrogated on other grounds by Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009), quoting *Geiger v. Geiger*, 117 Ohio St. 451, 466, 160 N.E. 28 (1927), quoting *State v. Bickford*, 28 N.D. 36, 147 N.W. 407 (1913).

{¶ 72} In this case, the unconstitutional provision reads:

> The judge may limit an arson offender's duty to reregister at an arson offender's sentencing hearing to not less than ten years if the judge receives a request from the prosecutor and the investigating law enforcement agency to consider limiting the arson offender's registration period.

R.C. 2909.15(D)(2)(b). As discussed above, the part that makes it unconstitutional is the condition: "[I]f the judge receives a request from the prosecutor and the investigating law enforcement agency to consider limiting the arson offender's registration period." *Id.* That language can easily be stricken from the provision without the need to add words or terms of any kind, as follows:

> The judge may limit an arson offender's duty to reregister at an arson offender's sentencing hearing to not less than ten years ~~if the judge receives a request from the prosecutor and the investigating law enforcement agency to consider limiting the arson offender's registration period~~.

(Strikethrough added.) *Id*.

{¶ 73} It is also possible to strike the entirety of subdivision (b) so that no discretion exists for a trial court to consider limiting the registration term, period. Either way, the remainder of the statute would be intelligible and sensible on its own, and it would either provide a trial court with discretion to shorten the registration period or provide no such discretion under any circumstances. In the former instance, it would read, "The judge may limit an arson offender's duty to reregister at an arson offender's sentencing hearing to not less than ten years," or it would provide no judicial discretion in that regard at all. In any event, severing the offending language would in no way defeat "the apparent intention of the Legislature" in enacting the arson-offender-registration scheme, *Foster* at ¶ 95. I therefore submit that the unconstitutional language can and should be stricken from R.C. 2909.15(D)(2)(b).

## CONCLUSION

{¶ 74} Because I believe R.C. 2909.15(D)(2)(b) is unconstitutional, I would either sever the entire provision or strike only the following language from it: "[I]f

the judge receives a request from the prosecutor and the investigating law enforcement agency to consider limiting the arson offender's registration period." Under the latter approach, the language in subdivision (b) would read only as follows:

> The judge may limit an arson offender's duty to reregister at an arson offender's sentencing hearing to not less than ten years.

*Id*. Because the majority does not take this course, I concur in its conclusion that it is the Ohio Constitution that we must apply here, but I dissent from its application of the Ohio Constitution.

DONNELLY, J., concurs in the foregoing opinion.

_____

**FISCHER, J., dissenting.**

{¶ 75} Because R.C. 2909.15(D)(2)(b) allows members of the executive branch of government—the prosecutor and the investigating law-enforcement agency involved in a case—to determine whether a trial court has discretion at sentencing to reduce an arson offender's arson-registration period, Ohio's arson-offender-registration scheme violates the separation-of-powers doctrine. Since the majority opinion holds otherwise, I must respectfully dissent.

### Separation of Powers

{¶ 76} The separation-of-powers doctrine is "implicitly embedded" in the Ohio Constitution. *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 158-159, 503 N.E.2d 136 (1986); *see also State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 42 (lead opinion). The three branches of government—legislative, executive, and judicial—all "have their own unique powers and duties that are separate and apart from the others." *State v. Thompson*, 92 Ohio St.3d 584, 586, 752 N.E.2d 276 (2001).

**{¶ 77}** The people of Ohio vested the legislative power of the state in the General Assembly through Article II, Section 1 of the Ohio Constitution. The General Assembly "has the plenary power to prescribe crimes and fix penalties." *State v. Morris*, 55 Ohio St.2d 101, 112, 378 N.E.2d 708 (1978). The General Assembly, therefore, has authority to enact statutes that guide a trial court's sentencing discretion. *See State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 12-19. However, the General Assembly shall not exercise any power that belongs to the judiciary. *See* Article II, Section 32, Ohio Constitution.

**{¶ 78}** The judicial power of the state is vested in the courts through Article IV, Section 1 of the Ohio Constitution. The " 'judicial function to hear and determine a controversy between adverse parties, to ascertain the facts, * * * apply[] the law to the facts, [and] render a final judgment' " is within the purview of the judiciary. *Thompson* at 586, quoting *Fairview v. Giffee*, 73 Ohio St. 183, 190, 76 N.E. 865 (1905). This necessarily includes " '[t]he determination of guilt in a criminal matter and the sentencing of a defendant convicted of a crime.' " *State v. Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790, 864 N.E.2d 630, ¶ 31, quoting *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 136, 729 N.E.2d 359 (2000); *see also State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus (a final judgment of conviction is comprised of a finding of guilt, the offender's sentence, the trial court's signature, and a time stamp indicating entry upon the journal by the clerk of court), citing Crim.R. 32(C); *State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 648, 4 N.E. 81 (1885) ("[t]he trial, verdict, and sentence provided by law are judicial functions"). Ohio's courts of general jurisdiction "possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions *and cannot be directed, controlled or impeded* therein by other branches of the government." (Emphasis added.) *State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 423 N.E.2d 80 (1981), paragraph two of the syllabus.

{¶ 79} And lastly, the executive power of the state is vested in the governor through Article III, Section 5 of the Ohio Constitution. The governor has the "power, *after conviction*, to grant reprieves, commutations, and pardons, for all crimes and offenses * * * upon such conditions as the Governor may think proper; subject, however, to such regulations, as to the manner of applying for commutations and pardons, as may be prescribed by law." (Emphasis added.) Article III, Section 11, Ohio Constitution.

{¶ 80} Powers belonging to one branch of government are "not to be directly and completely administered by either of the other" branches, and none of the branches may "possess directly or indirectly an overruling influence over the others." *State ex rel. Bryant v. Akron Metro. Park Dist. for Summit Cty*., 120 Ohio St. 464, 473, 166 N.E. 407 (1929). This is so that each branch of government can maintain "its integrity and independence," *Thompson*, 92 Ohio St.3d at 586, 752 N.E.2d 276, which fosters confidence in the government.

{¶ 81} Therefore, the General Assembly may not "delegate to the executive branch of government the power to exercise judicial authority." *Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790, 864 N.E.2d 630, at ¶ 34. And in both *Sterling* and *Bray*, 89 Ohio St.3d 132, 729 N.E.2d 359, this court stated that the sentencing of an offender is solely within the province of the judiciary. *Sterling* at ¶ 31; *Bray* at 136.

### Arson-Registration Requirements

{¶ 82} The first question this court must answer in this case is whether an arson offender's arson-registration requirements are part of the offender's sentence. Looking at the statutory scheme, I do not see how they are not.

{¶ 83} The term "arson offender" includes a person who is convicted of or pleads guilty to an arson-related offense or who was confined in a jail, workhouse, state correctional institution, or other institution for an arson-related offense on or after the effective date of R.C. 2909.13. R.C. 2909.13(B)(1) and (2). An arson

offender must be provided with notice of his or her duty to register with the sheriff of the county in which he or she resides. R.C. 2909.14(A). If the offender is not sentenced to confinement, the notice must be provided by the judge at sentencing, R.C. 2909.14(A)(2), and if the offender is sentenced to confinement, the notice must be provided prior to the offender's release by an official in charge of the institution in which the offender is confined, R.C. 2909.14(A)(1). Thus, the General Assembly ensured that an arson offender receives notice of his or her duty to register prior to the completion of the offender's term of confinement. *See State v. Brasher*, 171 Ohio St.3d 534, 2022-Ohio-4703, 218 N.E.3d 899, ¶ 24, 26; *id.* at ¶ 30 (O'Connor, C.J., concurring in judgment only) (a trial court loses jurisdiction to modify a sentence once the sentence has been completed).

{¶ 84} An arson offender is required to register annually for life. R.C. 2909.15(D)(2)(a). The only exception to that lifetime-registration requirement is that a trial court "may limit an arson offender's duty to reregister at an arson offender's *sentencing hearing* to not less than ten years." (Emphasis added.) R.C. 2909.15(D)(2)(b). However, a trial court may limit the offender's duty to reregister only "if the judge receives a request from the prosecutor and the investigating law enforcement agency to consider limiting the arson offender's registration period." *Id*. The trial court is not provided with any discretion to limit the arson offender's registration requirements in any other part of the Revised Code.

{¶ 85} The majority opinion maintains that the arson-registration requirements arise by operation of law, so the requirements are not part of an arson offender's sentence. Similarly, this court recently determined that a sex offender's registration requirements under Ohio's Megan's Law, Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, and Am.Sub.S.B. No. 5, 150 Ohio Laws, Part IV, 6558, arise by operation of law based on the offender's conviction and thus are not part of the offender's sentence. *State v. Schilling*, __ Ohio St.3d __, 2023-Ohio-3027, __ N.E.3d __, ¶ 25. I do not disagree that the arson-offender-registration

requirements arise by operation of law based on the fact of the offender's conviction for arson. But a conviction occurs only when there is both a finding of guilt and a sentence. *See Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, at paragraph one of the syllabus. And given that the only discretion a trial court has to shorten an arson offender's duty to register under the Revised Code applies at the offender's *sentencing*, it is difficult to conclude that the registration duty is not part of the offender's sentence for arson.

### R.C. 2909.15(D)(2)(b) Violates the Separation-of-Powers Doctrine

{¶ 86} Because I would hold that the registration requirements under Ohio's arson-offender-registration scheme are part of the offender's sentence, since the discretion provided to the trial court regarding registration is exercised at the *sentencing hearing*, the question becomes whether the ability of the prosecutor and the investigating law-enforcement agency to dictate the trial court's sentencing discretion pursuant to R.C. 2909.15(D)(2)(b) violates the separation-of-powers doctrine. I conclude that it does.

{¶ 87} Through R.C. 2909.15(D)(2)(b), the General Assembly expressly permitted two members of the executive branch to control and impede the trial court's sentencing authority, by giving the trial court discretion to limit an arson offender's registration period only when the prosecutor and the investigating law-enforcement agency say the court may exercise that discretion. Such a delegation of judicial authority to the executive branch is impermissible, because it permits the executive branch to interfere with courts' discretion at sentencing, which is not traditionally a function of the executive branch. *See Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790, 864 N.E.2d 630, at ¶ 31-35 (the sentencing of an offender is solely within the province of the judiciary); *Bray*, 89 Ohio St.3d at 136, 729 N.E.2d 359 ("The determination of guilt in a criminal matter and the sentencing of a defendant convicted of a crime are solely the province of the judiciary"); *see also State v. Goodman*, 5th Dist. Licking No. 2007CA00064, 2009-Ohio-979, ¶ 15-20

(concerning prosecutorial discretion exercised *prior* to trial); *State v. Radcliff*, 142 Ohio St.3d 78, 2015-Ohio-235, 28 N.E.3d 69, ¶ 30 (concerning executive powers exercised *after* conviction).

**{¶ 88}** Further, a decision by two members of the executive branch to preclude any exercise of a trial court's discretion to limit an arson offender's registration period under R.C. 2909.15(D)(2)(b) is essentially unappealable. Such a decision interferes not only with the trial court's ability to sentence the arson offender but also with the appellate court's authority to review the sentence. *See Sterling* at ¶ 35-36. How can the people of Ohio count on an independent and fair criminal-justice system when members of the executive branch who are at the heart of a prosecution are able to conclusively tell the judiciary that a particular sentence may not be imposed?

**{¶ 89}** R.C. 2909.15(D)(2)(b) violates the separation-of-powers doctrine, beyond a reasonable doubt, because the General Assembly has delegated judicial authority to two members of the executive branch by permitting them to dictate whether a trial court may exercise its discretion at sentencing to limit an arson offender's arson-registration period. *See State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus (a court may declare a statute unconstitutional only if the statute is proved unconstitutional beyond a reasonable doubt); *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 25 (same).

### Conclusion

**{¶ 90}** Because I would hold that R.C. 2909.15(D)(2)(b) violates the separation-of-powers doctrine, I respectfully dissent.

———————————

Julia R. Bates, Lucas County Prosecuting Attorney, and Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Kalniz, Iorio & Reardon Co., L.P.A., and Edward J. Stechschulte, for

appellant.

Timothy Young, Ohio Public Defender, and R. Jessica Manungo, Assistant Public Defender, urging reversal for amicus curiae Office of the Ohio Public Defender.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Michael J. Hendershot, Chief Deputy Solicitor General, urging affirmance for amicus curiae Ohio Attorney General Dave Yost.

Steven L. Taylor, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

_____