[Cite as *State v. Longworth*, 2011-Ohio-4191.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                       :              C.A. CASE NO.   24327

v.                                               :              T.C. NO.   04CR3200

JERRY VAN LONGWORTH                  :                 (Criminal appeal from
                                                                Common Pleas Court)
    Defendant-Appellant                     :


                                                 :

       . . . . . . . . . .

**O P I N I O N**

Rendered on the ___19th___ day of ___August___, 2011.

. . . . . . . . . .

JOHNNA M. SHIA, Atty. Reg. No. 00067685, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P. O. Box 341021, Beavercreek, Ohio 45434
      Attorney for Defendant-Appellant

. . . . . . . . . .

DONOFRIO, J. (by assignment)

{¶ 1}   Defendant-appellant, Jerry Van Longworth, appeals from a Montgomery County Common Pleas Court judgment revoking his community control sanctions and sentencing him to two years in prison for violating his community control.

{¶ 2}   In 2005, appellant was convicted of felonious assault.  On October 5, 2005, the trial court sentenced him to community control for a period not to exceed five

years with various conditions. The sentencing entry stated that if appellant violated the terms of his community control, the court could impose a prison term of two years.

{¶ 3} Shortly thereafter, appellant's community control officer informed the court that she was unaware of appellant's whereabouts in violation of his community control. Consequently, on November 29, 2005, the trial court found that appellant was an absconder and put on a capias order for his arrest.

{¶ 4} Apparently and for unknown reasons, appellant was not arrested until September 14, 2010. The court thereafter held a community control revocation hearing at which time it revoked appellant's community control and sentenced him to two years in prison.

{¶ 5} Appellant filed a timely notice of appeal on November 5, 2010.

{¶ 6} Appellant now raises two assignments of error, the first of which states:

{¶ 7} "THE TRIAL COURT VIOLATED DEFENDANT'S DUE PROCESS RIGHTS WHEN IT REVOKED HIS COMMUNITY CONTROL SANCTIONS."

{¶ 8} Appellant argues that the trial court erred in revoking his community control without first determining that he knew he had a right to be heard in person, to dispute probable cause and the merits of the violation, to present evidence and mitigation, and to confront any adverse witnesses.

{¶ 9} Appellant failed to raise an objection to the alleged due process violations in the trial court. Therefore, he has waived all but plain error on appeal. *State v. Blakeman*, Montgomery App. No. 18983, 2002-Ohio-2153. Plain error is one where but for the error, the outcome of the trial clearly would have been different. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, at ¶78.

{¶ 10} In support of his position, appellant relies on the case of *State v. Harmon*, Champaign App. No. 2007 CA 35, 2008-Ohio-6039. In that case, the trial court revoked Harmon's community control and sentenced her to prison after a drug test came back positive. She appealed arguing that the trial court erred in revoking her community control without addressing her directly and without determining that she understood the proceedings in violation of her due process rights.

{¶ 11} The court relied heavily on *Blakeman*, Montgomery App. No. 18983,

where this court set out the applicable law:

{¶ 12} "Community control is similar to probation in its detrimental effect on a defendant's liberty interest. Revocation of probation has been held to implicate two due process requirements. The first of those is a preliminary hearing to determine whether there is probable cause to believe that the defendant has violated the terms of his probation. *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656.* * *

{¶ 13} "The second requirement that the due process right imposes is a final hearing to determine whether probation should be revoked. Id.

{¶ 14} "'At the final revocation hearing, the State must (1) provide the probationer with written notice of the alleged violations of probation; (2) disclose the evidence against him; (3) give the probationer an opportunity to be heard in person and to present witnesses and documentary evidence; (4) allow him to confront and cross-examine adverse witnesses; (5) afford him a neutral and detached hearing body; and, (6) provide the probationer with a written statement by the fact finder as to the evidence relied upon and the reasons for revoking probation. *Gagnon*, supra at 782 * * *.'

{¶ 15} "*State v. Gilreath* (July 7, 2000), Greene App.No. 2000-CA-1, unreported, p. 2." *Blakeman*, supra.

{¶ 16} In *Harmon*, Harmon's counsel waived her probable cause hearing and her merit hearing. The trial court only addressed counsel, not Harmon. The only time it addressed Harmon was in asking her if she had anything to say. In finding plain error and vacating Harmon's sentence, this court found:

{¶ 17} "The record reveals that the trial court accepted counsel's representations regarding probable cause and the merits of the matter and proceeded to disposition without addressing Harmon directly and determining that she understood the two-part proceeding and the rights she was waiving. * * * The record fails to demonstrate that Harmon knew that she had the right to be heard in person during adjudication, to dispute probable cause and the merits of the violation, to present evidence and mitigation and to confront any adverse witnesses who may have testified. In a process that was far from flexible, the trial court rolled through the adjudicatory phase of the hearing to disposition without addressing Harmon directly and determining if she was

intentionally waiving known rights. In other words, the deprivation of Harmon's liberty interest did not comport with the standards which due process of law imposes. *Blakeman*." *Harmon*, at ¶22.

{¶ 18} In the present case, at the probable cause hearing, appellant's attorney addressed the court and stated that appellant waived the probable cause hearing and entered a general denial. (Sept. 29, 2010, Tr. 2). The court then addressed appellant and advised him of the allegations against him. (Sept. 29, 2010, Tr. 3). Appellant did not make a statement.

{¶ 19} At the revocation hearing appellant, through his counsel, admitted to the violation as it was described in the notice of violation. (Oct. 20, 2010, Tr. 13). The court then asked appellant if he had anything to say, to which he responded "no." (Oct. 20, 2010, Tr.14). Appellant's counsel then made a statement in mitigation on appellant's behalf. (Oct. 20, 2010, Tr.14-15). The court once again asked appellant if he had anything to say and he simply stated that he was sorry and that he needed to get into a post-traumatic stress disorder program. (Oct. 20, 2010, Tr.15). The court then sentenced appellant.

{¶ 20} In addition and prior to these two hearings, a Notice of CCS Revocation Hearing and Order was filed. The notice, which was copied to appellant, informed him, among other things:

{¶ 21} "The Division of Criminal Justice Services is giving notice to you and to the Court of certain matters, which if true, constitute a violation of the terms of Community Control (CCS). You have a legal right to a probable cause hearing regarding the allegations set forth in this notice. You may waive this right if you so desire. You have the right to present witnesses and evidence favorable to your defense, as well as the right to disclosure of evidence. You have the right to confront adverse witnesses, unless they would be subjected thereby to a risk of harm. You have the right to be represented by counsel of choice, or to have counsel appointed if you are indigent."

{¶ 22} The notice went on to inform appellant of the alleged violation of failing to report and that he was declared an absconder.

{¶ 23} Appellant makes no claim that the outcome of his revocation hearing

would have been any different had he received notice of his rights or the alleged violation in any other manner. This indicates no plain error. See *State v. Pavlich*, Erie App. No. E-10-011, 2011-Ohio-802 (under plain error review, the court found that the defendant who alleged that he did not receive written notice of a probation violation and made no claim that the outcome would have been any different had he received notice of his probation violations in any other manner or that he would have prepared his case any differently did not demonstrate plain error that he was not notified). Additionally, appellant makes no claim that he did not violate his community control or that he is innocent of the violation. This too demonstrates no plain error. See *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093 (Ohio Supreme Court concluded that defendant who entered a guilty plea and was erroneously not advised by trial court of the effect of his plea was not prejudiced under plain error standard of review because he failed to assert his innocence).

{¶ 24} Without an argument that the outcome of his revocation hearing would have been different, appellant cannot demonstrate plain error here.

{¶ 25} Furthermore, the state complied with the *Gagnon* requirements. It provided him with written notice of the alleged community control violation and disclosed that the evidence against him was that he failed to report to his probation officer. The court provided appellant with an opportunity to be heard at his hearing. Appellant, through his counsel, entered an admission so there were no adverse witnesses to confront and to cross-examine. There is no indication that the court was anything but neutral and detached. The court provided appellant with a written judgment entry. And because appellant entered an admission there was no evidence to include in the entry.

{¶ 26} Accordingly, appellant's first assignment of error is without merit.

{¶ 27} Appellant's second assignment of error states:

{¶ 28} "THE TRIAL COURT ERRED BY DISAPPROVING THE TRANSFER OF THE DEFENDANT TO TRANSITIONAL CONTROL IN THE SENTENCING ENTRY."

{¶ 29} In its judgment entry terminating appellant's community control and sentencing him to prison, the court made a statement that: "The Court * * * disapproves

the transfer of the defendant to transitional control under Section 2967.26 of the Revised Code."

**{¶ 30}** Appellant argues that the trial court erred in disapproving his placement in a transitional control program before he even made it to prison. In support, appellant relies on *State v. Howard*, 190 Ohio App.3d 734, 2010-Ohio-5283.

**{¶ 31}** Based on *Howard*, the state concedes error.

**{¶ 32}** The department of rehabilitation and correction may establish a transitional control program in order to closely monitor a prisoner's adjustment to community supervision during the final 180 days of the prisoner's confinement. R.C. 2967.26(A)(1). At least three weeks prior to transferring a prisoner to transitional control, the adult parole authority is to give notice to the trial court, which may then disapprove the transfer. R.C. 2967.26(A)(2).

**{¶ 33}** As is the case here, the trial court in *Howard*, Montgomery App. No. 23815, disapproved of transitional control in the sentencing entry. In reversing Howard's sentence and remanding for resentencing, this court held:

**{¶ 34}** "A trial court's ability to approve or disapprove of transitional control occurs only after a person has been incarcerated and the adult parole authority sends a notice to the trial court indicating that it intends to grant transitional control under R.C. 2967.26(A)." Id. at ¶2.

**{¶ 35}** In this case, the trial court made the same error as in *Howard*. Accordingly, appellant's second assignment of error has merit.

**{¶ 36}** For the reasons stated above, the trial court's judgment revoking appellant's community control is hereby affirmed. That portion of the trial court's judgment disapproving the transfer of the defendant to transitional control is reversed. Appellant's sentence is hereby modified so that the language, "[The Court] disapproves the transfer of the defendant to transitional control under Section 2967.26 of the Revised Code" is removed from his termination entry.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

(Hon. Gene Donofrio, Seventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Johnna M. Shia
Robert Alan Brenner
Hon. Barbara P. Gorman