[Cite as *State v. Talbert*, 2025-Ohio-3116.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-T-0081 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| ANTHONY TALBERT, | Trial Court No. 2024 CR 00052 |
| Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: September 2, 2025
Judgment: Reversed and remanded

*Dennis Watkins*, Trumbull County Prosecutor, *Ryan J. Sanders* and *Charles L. Morrow*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*John P. Laczko*, John P. Laczko, LLC, City Centre One, Suite 975, 100 East Federal Street, Youngstown, OH 44503 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Anthony Talbert, appeals the judgment of the Trumbull County Court of Common Pleas sentencing him to an aggregate prison term of 27 months to be served consecutively to his sentence in a separate case.

{¶2} Appellant pleaded guilty to Illegal Conveyance of Drugs of Abuse onto Grounds of Specified Governmental Facility, a fourth-degree felony, and Possession of Fentanyl-Related Compound, a fifth-degree felony. As part of Appellant's sentence, the trial court prohibited him from participating in the Department of Rehabilitation and Correction's ("DRC") transitional control program.

{¶3} Appellant raises a single assignment of error, contending that the trial court erred by disapproving transitional control at sentencing.

{¶4} Having reviewed the record and the applicable law, we find that Appellant's assignment of error has merit. The trial court exceeded its legal authority by prohibiting Appellant's participation in the transitional control program. First, transitional control is not a part of the criminal sentence because it is not a "sanction" that is "imposed by the sentencing court on an offender." Second, even if transitional control may be considered a part of the criminal sentence, the trial court lacked statutory authority to prohibit Appellant's participation. Therefore, the portion of the trial court's judgment prohibiting Appellant's participation in the transitional control program is clearly and convincingly contrary to law.

{¶5} We reverse that portion of the trial court's judgment and remand for the trial court to correct its sentencing entry in accordance with this opinion.

**Substantive and Procedural History**

{¶6} On January 16, 2024, the Trumbull County Grand Jury indicted Appellant on two felony counts: Count One, Illegal Conveyance of Drugs of Abuse onto Grounds of Specified Governmental Facility, a third-degree felony in violation of R.C. 2921.36, and Count Two, Possession of Fentanyl-Related Compound, a fifth-degree felony in violation of R.C. 2925.11. On January 17, 2024, Appellant was arraigned and pleaded not guilty.

{¶7} On June 10, 2024, the parties entered into a plea agreement in which Appellant agreed to plead guilty to an amended Count One, Illegal Conveyance of Drugs of Abuse onto Grounds of Specified Governmental Facility, a fourth-degree felony in violation of R.C. 2921.36, and Count Two as charged. The trial court held a plea hearing

at which it engaged in a colloquy with Appellant pursuant to Crim.R. 11. Following the colloquy, the trial court accepted Appellant's pleas of guilty and found him guilty. The trial court ordered a presentence investigation ("PSI") and set the matter for sentencing.

{¶8} On August 21, 2024, the trial court held a sentencing hearing. The trial court stated that it had reviewed the PSI, considered the overriding principles and purposes of felony sentencing, and considered all relevant seriousness and recidivism factors in R.C. 2929.11 and 2929.12. The trial court found that Appellant "has a history of criminal convictions" and "is not amenable to any available community control" and that "a prison sentence is consistent with the purposes and principles of sentencing." The trial court further found that Appellant "has served five prior prison sentences, including for Burglary, a violent offense," "has been rejected by NEOCAP," and has "a very high risk to re-offend" and that "a prison term is proportional to [Appellant's] conduct and is consistent with similarly situated Defendants." The trial court also made consecutive sentence findings pursuant to R.C. 2929.14(C)(4).

{¶9} The trial court sentenced Appellant to prison terms of 17 months on amended Count One and 10 months on Count Two, to be served consecutively, for an aggregate prison term of 27 months. The trial court also ordered Appellant to serve his sentences consecutively to his sentence in a separate case (Case No. 2024 CR 00271). The trial court further ordered that Appellant "is not permitted to participate in any Department of Corrections early release, transitional control, alternative housing placement, or any other program currently run by the Department of Corrections, or developed in the future designed to shorten a sentence imposed by this Court."

{¶10} On August 30, 2024, the trial court filed its sentencing entry. On October 4, 2024, Appellant filed a motion for leave to file a delayed appeal, which this Court granted on November 13, 2024. He raises a single assignment of error.

**Assignment of Error and Analysis**

{¶11} Appellant's sole assignment of error states: "The trial court erred in disapproving of transitional control during sentencing and prior to notice from the Adult Parole Authority."

{¶12} Appellant states that R.C. 2967.26 allows for the transfer of prisoners to transitional control during the final 180-days of their confinement. He argues that a trial court errs when it "prematurely disapproves of transitional control in its [sentencing] entry," citing precedent from the Fifth and Second Appellate Districts. The State of Ohio counters that a trial court is not precluded from denying transitional control during sentencing, citing precedent from the Twelfth and Fourth Districts.

{¶13} The standard of review for felony sentences is governed by R.C. 2953.08(G)(2), which provides:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶14} Appellant's assignment of error involves the "otherwise contrary to law" standard in R.C. 2953.08(G)(2)(b). The Supreme Court of Ohio has defined "contrary to law" as "'in violation of statute or legal regulations at a given time.'" *State v. Jones*, 2020-Ohio-6729, ¶ 34, quoting *Black's Law Dictionary* (6th Ed. 1990). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶15} R.C. 2967.26(A)(1) authorizes the DRC to establish, by rule, a transitional control program to closely monitor an eligible prisoner's adjustment to community supervision during the final 180 days of confinement. During this period, eligible prisoners may be confined in a suitable, licensed facility or in a residence the DRC has approved for that purpose and monitored by an electronic monitoring device. *Id*. The DRC established a transitional control program in Adm.Code Ch. 5120-12.

{¶16} Most relevant here, R.C. 2967.26(A)(2) sets forth a procedure pursuant to which the trial court may disapprove a prisoner's transfer to transitional control, as follows:

[1] At least sixty days prior to transferring to transitional control under this section a prisoner who is serving a definite term of imprisonment or definite prison term of less than one year for an offense committed on or after July 1, 1996, or who is serving a minimum term of less than one year under a non-life indefinite prison term, on or after April 4, 2023, the division of parole and community services of the department of rehabilitation and correction shall give notice of the pendency of the transfer to transitional control to the court of common pleas of the county in which the indictment against the prisoner was found and of the fact that the court may disapprove the transfer of the prisoner to transitional control and shall include the institutional

summary report prepared by the head of the state correctional institution in which the prisoner is confined. [2] The head of the state correctional institution in which the prisoner is confined, upon the request of the division of parole and community services, shall provide to the division for inclusion in the notice sent to the court under this division an institutional summary report on the prisoner's conduct in the institution and in any institution from which the prisoner may have been transferred. The institutional summary report shall cover the prisoner's participation in school, vocational training, work, treatment, and other rehabilitative activities and any disciplinary action taken against the prisoner. [3] If the court disapproves of the transfer of the prisoner to transitional control, the court shall notify the division of the disapproval within thirty days after receipt of the notice. If the court timely disapproves the transfer of the prisoner to transitional control, the division shall not proceed with the transfer. If the court does not timely disapprove the transfer of the prisoner to transitional control, the division may transfer the prisoner to transitional control.

{¶17} Ohio appellate courts have disagreed about whether a trial court may disapprove transitional control at sentencing. The Fifth and Second Districts have concluded that a trial court may *not* do so. In *State v. Spears*, 2011-Ohio-1538 (5th Dist.), the Fifth District held:

> While the statute does not specifically prohibit the court from denying the transitional control prior to notice, we find to do so clearly thwarts the design and purpose of the statute. The statute is designed to promote prisoner rehabilitation effort and good behavior while incarcerated. To prematurely deny the possibility of transitional control runs contra to those purposes. While the trial court retains discretion to disapprove the transitional control, we find to do so in the sentencing entry prior to notice from the adult parole authority is premature.

*Id*. at ¶ 37. *Accord State v. Oliver*, 2011-Ohio-3950, ¶ 4-5 (5th Dist.); *State v. Small*, 2011-Ohio-4086, ¶ 61-66 (5th Dist.); *State v. Holland*, 2011-Ohio-6042, ¶ 4-5 (5th Dist.).

{¶18} Similarly, in *State v. Howard*, 2010-Ohio-5283 (2d Dist.), the Second District held that "[a] trial court's ability to approve or disapprove of transitional control occurs only after a person has been incarcerated and the adult parole authority sends a notice to the trial court indicating that it intends to grant transitional control under R.C. 2967.26(A)." *Id*.

at ¶ 2.  Therefore, "it is premature for a trial court, at sentencing, to disapprove transitional control."  *State v. Porcher*, 2011-Ohio-5976, ¶ 23 (2d Dist.).  *Accord State v. Longworth*, 2011-Ohio-4191, ¶ 27-35 (2d Dist.); *State v. Hamby*, 2011-Ohio-4542, ¶ 23 (2d Dist.); *State v. Griffie*, 2011-Ohio-6704, ¶ 39 (2d Dist.); *State v. DeWitt*, 2012-Ohio-635, ¶ 24 (2d Dist.); *State v. Bates*, 2012-Ohio-6039, ¶ 47 (2d Dist.); *State v. Berry*, 2014-Ohio-132, ¶ 54 (2d Dist.); *State v. Chaffin*, 2014-Ohio-2671, ¶ 52-54 (2d Dist.); *State v. Bailey*, 2016-Ohio-2957, ¶ 10-11 (2d Dist.).

{¶19}  The Twelfth and First Districts have reached the opposite conclusion.  In *State v. Toennisson*, 2011-Ohio-5869 (12th Dist.), the Twelfth District held that "R.C. 2967.26 does not prohibit the absolute denial of transitional control during sentencing, and . . . such a decision would not be premature."  *Id*. at ¶ 36.  The court reasoned as follows:

> [W]e fail to see how R.C. 2967.26 prohibits the trial court from predetermining that transitional control is inapplicable during sentencing. The statutory language does not require the trial court to await a decision by the adult parole authority in order to pass on transitional control, or, for that matter, intensive prison programs.  Instead, the statute simply grants an undecided court additional discretion to consider a prisoner's good behavior, if and when the adult parole authority files notice and a report. R.C. 2967.26(A)(2).
>
> Moreover, even when confronted with a prisoner's good behavior, the trial court cannot abandon its most important obligation to protect the public and punish the offender.  R.C. 2929.11; R.C. 2929.12.  These duties transcend the trial court's obligation toward prisoners.  Prior to any notice from the parole authority, a trial court must consider the principles and purposes of sentencing under R.C. 2929.11, and balance the seriousness and recidivism factors under R.C. 2929.12.  If, during sentencing, the trial court properly considers these factors in addition to the charges, the findings set forth in the record, any oral statements, victim impact statements or presentence investigation reports, etc., then it may clearly determine that the reasons for its sentence would be defeated by later granting transitional control.

Case No. 2024-T-0081

*Id.* at ¶ 34-35.  *Accord State v. Bryant*, 2012-Ohio-678, ¶ 23-24 (12th Dist.).

{¶20}  In *State v. Tucker*, 2012-Ohio-50 (12th Dist.), the appellant argued that the trial court's objection to transitional control at sentencing precluded his opportunity for rehabilitation.  *Id.* at ¶ 9.  The Twelfth District rejected this argument, stating in relevant part, "In *Toennisson*, we . . . noted the trial court's obligation to promote prisoner rehabilitation was far outweighed by its primary duties to protect the public and punish the offender" under "R.C. 2929.11" and "2929.12."  *Id.* at ¶ 11.  "Thus, we reject appellant's argument as it relates to the overriding significance of his rehabilitation."  *Id.*

{¶21}  In *State v. Brown*, 2016-Ohio-310 (1st Dist.), the First District reasoned, "it is undisputed that the trial court has the statutory authority and wide discretion to disapprove and ultimately block [appellant's] participation in the [transitional control] program as part of its sentencing powers."  *Id.* at  ¶ 16.  In addition, the appellant "agreed that he would not be able to participate in this program as a condition of his 12-year prison term."  *Id.*  Therefore, the court concluded that "R.C. 2967.26 permits the restriction as part of the sentence under these circumstances."  Accordingly, "this part of [appellant's] sentence was authorized by law."  *Id.*[1]

{¶22}  The issue before us is not whether R.C. 2967.26 expressly precludes the trial court from disapproving transitional control at sentencing.  Rather, the issue is whether the trial court had legal authority to do so.  We conclude that the trial court lacked such authority.

---

1.  In *State v. Riley*, 2012-Ohio-1086 (4th Dist.), the Fourth District suggested that the issue was unripe for appellate review.  *Id.* at ¶ 14.  Since a prisoner's eligibility for transitional control typically cannot be determined until after incarceration, the court stated it could not determine if the prisoner was prejudiced.  *Id.*  However, the court ultimately determined the issue was moot for other reasons.  *Id.* at ¶ 15.  Since the State has not argued ripeness, we will not discuss it.

Case No. 2024-T-0081

{¶23} We disagree with the Twelfth and First Districts that a trial court's disapproval of transitional control is encompassed within its sentencing power. In fact, transitional control is not a part of the criminal sentence at all. R.C. Ch. 2929 is entitled "Penalties and Sentencing." A "sentence" is "the *sanction* or combination of *sanctions* imposed by the sentencing court on an *offender* who is convicted of or pleads guilty to an offense." (Emphasis added.) R.C. 2929.01(EE). A "sanction" is "any penalty imposed upon an *offender* who is convicted of or pleads guilty to an offense, as punishment for the offense" and "includes any sanction imposed pursuant to any provision of [R.C.] 2929.14 to 2929.18 or 2929.24 to 2929.28." (Emphasis added.) R.C. 2929.01(DD). An "offender" is "a person who, in this state, is convicted of or pleads guilty to a felony or a misdemeanor." R.C. 2929.01(Z).

{¶24} R.C. 2929.19 governs the sentencing hearing for "an offender who was convicted of or pleaded guilty to a felony." R.C. 2929.19(A). R.C. 2929.19 addresses various components of a criminal sentence, including prison terms, R.C. 2929.19(B)(2); statements for tier III sex offenders/child-victim offenders, R.C. 2929.19(B)(3); community control sanctions, R.C. 2929.19(B)(4); financial sanctions and fines, R.C. 2929.19(B)(5); local detention, R.C. 2929.19(B)(6); and mandatory penalties for certain OVI offenders, R.C. 2929.19(C). Notably, R.C. 2929.19(D) addresses two types of early release programs, providing that "[t]he sentencing court . . . may recommend placement of the offender in a program of shock incarceration under [R.C. 5120.031] or an intensive program prison under [R.C. 5120.032], disapprove placement of the offender in a program or prison of that nature, or make no recommendation." R.C. 2929.19 does not reference

Case No. 2024-T-0081

transitional control in any manner. Instead, the statutory definition of "prison term" in R.C. Ch. 2929 recognizes the possibility of transitional control, providing:

"Prison term" includes either of the following sanctions for an offender:

(a) A stated prison term;

(b) *A term in a prison* shortened by, or with the approval of, the sentencing court pursuant to section 2929.143, 2929.20, 5120.031, 5120.032, or 5120.073 of the Revised Code or *shortened pursuant to section 2967.26 of the Revised Code*.

(Emphasis added.) R.C. 2929.01(BB)(1).

{¶25} Thus, the possibility of transitional control pursuant to R.C. 2967.26 attaches to a prison term as a matter of law. *See State v. Daniel*, 2023-Ohio-4035, ¶ 26 (the duty to register as arson offender attaches as a matter of law).

{¶26} R.C. Ch. 2967 is entitled "Pardon; Parole; Probation." The transitional control program is set forth in R.C. 2967.26. It refers to the defendant as a "prisoner," which means "a person who is in *actual confinement* in a state correctional institution," rather than an "offender." (Emphasis added.) R.C. 2967.01(H). The DRC administers the transitional control program pursuant to Adm.Code Ch. 5120-12. "A prisoner placed into the transitional control program shall retain the status of inmate, but the [DRC] has the authority to permit the prisoner to leave the facility or residence to which he is assigned to engage in employment; educational or vocational training; treatment programming; reestablish and maintain ties with family members; or for other activities approved by the [DRC]." Adm.Code 5120-12-01(C).

{¶27} The minimum statutory eligibility criteria for the transitional control program are: (1) if the prisoner is serving a prison term for an offense committed prior to March 17, 1998, the prisoner would have been eligible for a furlough or conditional release under

Case No. 2024-T-0081

prior law; (2) any mandatory prison term must have expired; and (3) the prisoner must not be serving life imprisonment without parole pursuant to R.C. 2971.03. R.C. 2967.26(A)(1)(a)-(c). The DRC established the following additional eligibility criteria: (1) the prisoner must not have a record of more than two commitments for certain offenses of violence; (2) prisoners shall not have a designated security level of level 4 or higher; (3) prisoners shall not be currently confined in any restrictive housing or extended restrictive housing as a result of any disciplinary action; (4) prisoners shall not have any past or current convictions or juvenile adjudications for certain sex offenses, arson, or aggravated arson; and (5) prisoners shall not have any past or current convictions for conspiracy or complicity where the underlying offense is prohibited by the rule. Adm.Code 5120-12-01(F)(1)-(13).

{¶28} "All prisoners shall be screened to determine initial transitional control eligibility based on the criteria established" above. Adm.Code 5120-12-02(A). "Prisoners deemed eligible for transitional control consideration shall be interviewed by a unit manager/designee to receive an explanation of the transitional control program and to determine if the prisoner desires to be considered for transitional control." Adm.Code 5120-12-02(B). "An institutional summary report shall be prepared for prisoners desirous of further consideration." *Id*. For "[p]risoners serving a definite sentence," the adult parole authority determines eligibility for transfer to transitional control "by means of a review of the prisoner's record." Adm.Code 5120-12-02(D).

{¶29} The separate statutory schemes for felony sentences and transitional control demonstrate that transitional control is not a "penalty" that is "imposed upon an offender" as "punishment." R.C. 2929.01(DD). Therefore, transitional control is not a

Case No. 2024-T-0081

"sanction . . . imposed by the sentencing court on an offender who . . . pleads guilty to an offense." R.C. 2929.01(EE). *See Daniel*, 2023-Ohio-4035, at ¶ 20-21 (holding that an arson-offender's registration duty is not part of the criminal sentence). Rather, transitional control is a separate program administered by the DRC after an offender is incarcerated.

{¶30} The dissent contends that transitional control is part of the criminal sentence because it is "an integral part of sentence *execution*." (Emphasis added.) Even if transitional control is part of a sentence's execution, that does not inform whether transitional control is a "sanction" that is "imposed by the sentencing court on an offender." R.C. 2929.01(EE).

{¶31} The dissent next contends that transitional control is part of the criminal sentence based on the fact that the definition of "prison term" references transitional control. The dissent misapprehends the statutory definition. As stated, the possibility of transitional control pursuant to R.C. 2967.26 attaches to a prison term as a matter of law. R.C. 2967.26, in turn, governs the circumstances and procedures pursuant to which an eligible prisoner is transferred to transitional control, if ever.

{¶32} Even if transitional control may be considered a part of the criminal sentence, the dissent is incorrect in asserting that the trial court has "authority to determine all aspects" of a sentence. The Supreme Court of Ohio has explained that "[c]ourts have no *inherent discretion* with respect to the composition of a criminal sentence." (Emphasis added.) *Daniel*, 2023-Ohio-4035, at ¶ 28. "With respect to criminal sentencing, the judicial power is the power to impose a sentence authorized by law." *Id.* at ¶ 16. "Yet the judiciary does not possess exclusive control in the realm of criminal sentencing." *Id*. "The power to prescribe the punishment for a crime belongs to the

Case No. 2024-T-0081

legislature." *Id*. "The legislature likewise controls 'the scope of judicial discretion with respect to a sentence.'" *Id*., quoting *Mistretta v. United States*, 488 U.S. 361, 364 (1989). According to the Court, "It is wholly within the legislative power to determine what consequences attach to a conviction for a crime—the legislature may grant the court discretion in selecting from the consequences provided by law, or it may remove the court's discretion entirely and mandate certain consequences." *Id*. at ¶ 30. "And executive-branch officials routinely make decisions that affect sentencing exposure and the duration of the sentence served through the exercise of the prosecutorial, parole, and pardon powers." *Id*. at ¶ 16.

{¶33} Here, Appellant pleaded guilty to two offenses—a fourth-degree felony and a fifth-degree felony. Therefore, the trial court was authorized to "impose any sanction or combination of sanctions . . . provided in [R.C.] 2929.14 to 2929.18," including prison terms. R.C. 2929.13(A) and (B)(2). However, the DRC is authorized to consider shortening Appellant's prison term via the transitional control program. *See* R.C. 2967.26; Adm.Code Ch. 5120-12. The trial court is authorized to disapprove a prisoner's transfer to transitional control under limited circumstances. As stated, R.C. 2967.26(A)(2) requires the DRC's division of parole and community services, "[a]t least sixty days prior to transferring to transitional control under [R.C. 2967.26] a prisoner who is serving a definite term of imprisonment or definite prison term of less than one year," to provide written notice "to the court of common pleas of the county in which the indictment against the prisoner was found." *Id*. The written notice shall inform the court, among other things, that the court "may disapprove the transfer of the prisoner to transitional control." *Id*. The

court may disapprove the transfer by notifying the division within 30 days after the court's receipt of the notice. *Id*.

{¶34} The limited circumstances were not present in this case. First, Appellant was not a "prisoner" at the time of sentencing, i.e., "a person who is in *actual* confinement in a state correctional institution." (Emphasis added.) R.C. 2967.01(H). Rather, Appellant was facing *potential* confinement. Second, upon Appellant's actual confinement, he will not be serving "a definite prison term of less than one year." R.C. 2967.26(A)(2). Rather, Appellant will serve an aggregate definite prison term of 27 months consecutively to his sentence in a separate case. According to the DRC, "If an individual is recommended by the Parole Board and serving a sentence of *more than [one] year[]*, the individual is approved for the [transitional control] program and the Bureau of Community Sanctions begins the process of placement into a halfway house." (Emphasis added.) https://drc.ohio.gov/systems-and-services/1-parole/transitional-control (accessed Apr. 9, 2025). By contrast, "If an individual is recommended but is serving a sentence of *[one] year[] or less*, a certified letter of recommendation will be sent to the sentencing judge who must either approve or veto the individual's participation in the program." (Emphasis added.) *Id*.[2] Third, the division did not send written notice to the trial court. The division will not even be able to consider Appellant's eligibility for transitional control until he has actually been incarcerated.

{¶35} The dissent contends that R.C. 2967.26 "merely establishes one specific procedure by which the court may disapprove transitional control after the DRC provides

_____

2. The DRC's website references sentences that are more or less than *two years*, instead of *one year* as the statute provides. However, this discrepancy is most likely explained by the fact that, effective April 4, 2023, the General Assembly reduced the time period from two years to one. *See* 2022 Am.Sub.S.B. No. 288.

Case No. 2024-T-0081

notice—it does not establish this as the exclusive means for doing so." However, since the trial court has no inherent discretion, *Daniel*, 2023-Ohio-4035, at ¶ 28, then the trial court may only act pursuant to statute. Since no statute authorizes the trial court to disapprove transitional control under any other circumstances, then R.C. 2967.26 necessarily provides the exclusive means.

{¶36} Finally, we note the State's argument that the trial court's denial of transitional control at sentencing was warranted based on Appellant's extensive criminal history and the court's duty to the protect the public. The Twelfth District expressed similar justifications in *Tucker*, 2012-Ohio-50 (12th Dist.), finding that "the trial court's obligation to promote prisoner rehabilitation was far outweighed by its primary duties to protect the public and punish the offender" under "R.C. 2929.11" and "2929.12." *Id*. at ¶ 11. The dissent adopts this position, contending that the trial court's prohibition of transitional control was justified by its "obligation to protect the public."

{¶37} The Twelfth District's discussion of rehabilitation is no longer consistent with Ohio law. Effective October 29, 2018, the General Assembly revised R.C. 2929.11(A) to state that the third "overriding purpose[] of felony sentencing" is "to promote the effective rehabilitation of the offender." 2018 Am.Sub.S.B. No. 66. R.C. 2929.11(A) provides that "[a] court that sentences an offender for a felony *shall be guided by* the overriding purposes of felony sentencing." (Emphasis added.) R.C. 2929.11(B) provides that "[a] sentence imposed for a felony *shall be reasonably calculated to achieve* the *three* overriding purposes of felony sentencing." (Emphasis added.)

{¶38} Appellant is not serving a life sentence. Therefore, he will eventually be released into the community. Any improvement to Appellant's education, vocational

Case No. 2024-T-0081

skills, employability, family ties, and/or community support during his incarceration can only benefit Appellant and the community he will inevitably rejoin.

{¶39} In sum, the portion of the trial court's judgment prohibiting Appellant's participation in the transitional control program is clearly and convincingly contrary to law. Accordingly, Appellant's sole assignment of error has merit. That portion of the trial court's judgment is reversed. This case is remanded for the trial court to correct its sentencing entry in accordance with this opinion.

{¶40} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is reversed and remanded.

SCOTT LYNCH, J., concurs with a Concurring Opinion,
EUGENE A. LUCCI, J., dissents with a Dissenting Opinion.

_____

SCOTT LYNCH, J., concurs with a Concurring Opinion.

{¶41} I fully agree with the judgment and reasoning of the writing judge that the sentencing court was without authority to prohibit Talbert from participating in transitional control as part of his sentence. This is the determinative consideration of this appeal, not considerations of rehabilitation, criminal history or risk factors. I write separately simply to emphasize that, regardless of whether Talbert should or should not be allowed to participate in transitional control, the sentencing court is decidedly without authority to prohibit him from doing so at sentencing.

Case No. 2024-T-0081

***Courts do not have inherent discretion in criminal sentencing composition***

{¶42} As duly noted in the majority opinion, the Supreme Court of Ohio has stated unambiguously that "[c]ourts have no inherent discretion with respect to the composition of a criminal sentence." *State v. Daniel*, 2023-Ohio-4035, ¶ 28. Rather, "[t]he power to prescribe the punishment for a crime belongs to the legislature" and "[t]he legislature likewise controls 'the scope of judicial discretion with respect to a sentence.'" (Citation omitted.) *Id.* at ¶ 16. "With respect to criminal sentencing, the judicial power is the power to impose a sentence authorized by law." *Id.* Accordingly, if it could be shown that the legislature had authorized sentencing courts to prohibit a prisoner from being considered for transitional control, my vote would be to affirm the lower court in the present case. But such authority has not been shown and cannot be shown because it does not exist.

{¶43} To say, as does the dissenting opinion as well as other appellate decisions, that "[n]othing in R.C. 2967.26 expressly prohibits a trial court from disapproving transitional control at sentencing" is wholly inadequate as justification for the action taken by the lower court. Unless a statute expressly authorizes a trial court to disapprove transitional control at sentencing, such action is unauthorized. Courts have no inherent discretion with respect to the composition of a criminal sentence. Under the *nihil obstat* reasoning of the dissent, a sentencing court could just as easily have approved Talbert to participate in transitional control at sentencing inasmuch as there is nothing in the statute that expressly prohibits a court from doing so. In fact, since neither action is actually authorized by law, both are objectionable and beyond the power of the sentencing court to impose.

### *Transitional control is not part of a criminal sentence*

{¶44}　It is also suggested that transitional control is part of the offender's sentence imposed at sentencing.　This proposition is also without foundation.　The dissent argues that "transitional control is part of a prison term, which is a sanction, which constitutes the sentence." *Infra* at ¶ 63.　The dissent relies on the definition of a "prison term" as including "[a] term in a prison … shortened pursuant to Section 2967.26 of the Revised Code [transitional control]."　R.C. 2929.01(BB)(1)(b).　The reliance is perplexing.　A "prison term" includes a shortened "term in prison," not the time spent outside of prison on transitional control.　What is not perplexing is that, "if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender …, the court shall impose a prison term" as provided in R.C. 2929.14(A).　And section 2929.14 of the Revised Code is silent with respect to transitional control.

{¶45}　The word "impose" is significant because, while a sentencing court imposes a prison term, it does not impose transitional control.　As noted, the sentencing statute is silent with respect to transitional control.　Rather, transitional control is provided for in R.C. Ch. 2967 captioned Pardon; Parole; Probation.　The relevant statute provides that "[t]he department of rehabilitation and correction," not the court, "by rule, may establish a transitional control program for the purpose of closely monitoring a prisoner's adjustment to community supervision during the final one hundred eighty days of the prisoner's confinement."　R.C. 2967.26(A)(1).　"If the department," not the court, "establishes a transitional control program under this division, the division of parole and community services of the department of rehabilitation and correction," again not the court, "may transfer eligible prisoners to transitional control status under the program during the final

one hundred eighty days of their confinement and under the terms and conditions established by the department," not the court, "shall provide for the confinement as provided in this division of each eligible prisoner so transferred, and shall supervise each eligible prisoner so transferred in one or more community control sanctions." *Id.* Finally, "the division of parole and community services of the department of rehabilitation and correction," not the court, "shall give notice of the pendency of the transfer to transitional control to the court of common pleas of the county in which the indictment against the prisoner was found and of the fact that the court may disapprove the transfer of the prisoner to transitional control and shall include the institutional summary report prepared by the head of the state correctional institution in which the prisoner is confined." R.C. 2967.26(A)(2).

### *The court's role defined by a plain reading of the statute*

{¶46} A plain reading of the transitional control statute makes clear that the role assigned to the court of common pleas of the county in which the indictment against the prisoner was found, not the sentencing court, may disapprove a transfer to transitional control when given notice of the pendency of the transfer. That is the limit of what the legislature, the branch of government with the power to prescribe punishment for crime as well as the scope of judicial discretion with respect to a sentence, has authorized the trial court to do with respect to transitional control. The dissent characterizes this result as "absurd" and so not what the legislature could have intended. But there is nothing nonsensical about the way in which the statute is written, rather, the dissent disapproves of the way in which it is written. That is a judgment, however, which the courts are properly restrained from making. *Youngstown City School Dist. Bd. of Edn. v. State*, 2020-Ohio-

Case No. 2024-T-0081

2903, ¶ 24 ("a court has nothing to do with the policy or wisdom of a statute" which "is the exclusive concern of the legislative branch of the government") (citation omitted).

{¶47} The *Daniel* case is again instructive. In *Daniel*, the defendant was convicted of Arson which required the defendant to register as an arsonist annually for life with the local sheriff. However: "If the sentencing judge 'receives a request from the prosecutor and the investigating law enforcement agency to consider limiting the arson offender's registration period,' then the judge may, at the sentencing hearing, limit the offender's duty to reregister to a period of 'not less than ten years.' R.C. 2909.15(D)(2)(b)." *Daniel*, 2023-Ohio-4035, at ¶ 4. The defendant challenged the constitutionality of the reduced-registration provision on the grounds that it violated the separation of powers doctrine, i.e., "the reduced-registration provision unconstitutionally infringed on the judicial power to impose a criminal sentence." *Id.* at ¶ 8.

{¶48} The Supreme Court rejected the argument in the first instance for the reason set forth above: "there exists no generalized right to judicial review of discretionary executive-branch actions." *Id.* at ¶ 40. Just as "[a] prosecutor's decision whether to recommend a reduced registration period is not a judicial act" but, rather, a "decision [that] falls within the scope of … executive-branch officials," just so is the department of rehabilitation and correction's decision as to eligibility in a transitional control program. *Id.* "In other words, by requiring an executive-branch recommendation," or, in this case, notice of eligibility, "the General Assembly 'merely circumscribes the discretionary power that it grants to judges to [permit] a reduced registration period.'" (Citation omitted.) *Id.* at ¶ 37. Here, the legislature has circumscribed the court's discretion to disapprove transitional control to cases in which the department of rehabilitation and correction has

Case No. 2024-T-0081

initiated the transfer. *Compare id.* at ¶ 38 ("[t]he fact that the legislature has authorized courts to exercise discretion in cases in which the prosecutor initiates a request does not require that the courts have the same discretion in every case").

{¶49} The Supreme Court in *Daniel* went further and held that the arson registration requirement is not even part of a criminal sentence. "[T]he duty to register as an arson offender does not arise by judgment of a court; it attaches as a matter of law. It is therefore not part of the criminal sentence imposed by the judge." *Id.* at ¶ 26. The important point is that the duty to register is not "imposed" by the sentencing court. The Supreme Court cites the same definition of a "sentence" as that relied upon by the dissent: "A 'sentence' is 'the sanction or combination of sanctions *imposed by the sentencing court* on an offender who is convicted of or pleads guilty to an offense.'" (Emphasis added by the Supreme Court.) *Id.* at ¶ 21, citing R.C. 2929.01(EE). The court concluded that registration is not "imposed by the sentencing court" because "the court's role is limited to *notifying* a subset of offenders … of the duty to register." *Id.* at ¶ 21. The fact that "the prosecutor and the investigating law-enforcement agency [may] ask the trial court to reduce the offender's registration term … does not make the court's order granting or denying the request a part of the criminal sentence." *Id.* at ¶ 22. If the duty to register as an arsonist and the sentencing court's decision (made at sentencing) to reduce the registration term or not is not part of a criminal sentence, it is difficult to imagine the approval or disapproval of a transfer to transitional control initiated by officials of the executive branch is, as claimed by the dissent, "an integral component of the sentencing framework–not something separate from or outside the court's sentencing authority." *Infra* at ¶ 67.

***Separation of powers***

{¶50}   The dissent maintains that the majority's construction of the statute "raises serious separation of powers concerns by effectively giving an executive agency (DRC) the authority to modify a judicially-imposed sentence without meaningful judicial oversight." *Infra* at ¶ 72.  The argument is very similar to the one raised by Justice Brunner in her concurring/dissenting opinion in *Daniel*: The General Assembly "was free to provide a sentencing court with discretion to alter the period for which [arson] registration is required," but "what it could not do, but did, was provide a court with discretion that the court can exercise only when the executive branch permits the court to exercise it." *Daniel* at ¶ 59.

{¶51}   Assuming, *arguendo*, that transitional controls were part of an offender's sentence (rather than alteration of the conditions in which the sentence is served), the majority in *Daniel* effectively refuted the contention there can be no interplay between the judiciary and the executive branch in the execution of a sentence.  "[T]he judiciary does not possess exclusive control in the realm of criminal sentencing," rather "'the sentencing function long has been a peculiarly shared responsibility among the Branches of Government and has never been thought of as the exclusive constitutional province of any one Branch.'"  (Citation omitted.)  *Daniel* at ¶ 16.  "The legislature … controls 'the scope of judicial discretion with respect to a sentence,' … "[a]nd executive-branch officials routinely make decisions that affect sentencing exposure and the duration of the sentence served through the exercise of the prosecutorial, parole, and pardon powers."  (Citation omitted.)  *Id.*  Contrary to the dissent, there is no "artificial distinction between sentence imposition and execution" being created.

Case No. 2024-T-0081

*Conclusion*

{¶52} The foregoing is all that is necessary to dispose of the issue raised on appeal. The amendment of R.C. 2929.11(A) to include "the effective rehabilitation of the offender" as one of the purposes of felony sentencing is not dispositive. *Compare State v. Jones*, 2020-Ohio-6729, ¶ 42 ("[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12"). Neither is the sentencing court's "extensive evaluation of the defendant's criminal history and risk factors." The writing judge's point that the authority emphasizing these factors is now qualified by amended R.C. 2929.11 is duly noted. Nonetheless, the issue is simply whether the court was authorized by law to impose, as part of Talbert's criminal sentence, that he "is not permitted to participate in any Department of Rehabilitation and Corrections … transitional control … program." The majority opinion properly concludes that the court is not so authorized and, accordingly, I concur.

_____

EUGENE A. LUCCI, J., dissents with a Dissenting Opinion.

**I. Introduction and Issue Statement**

{¶53} I disagree with the lead and concurring opinion's position. The issue raised by Talbert, i.e., whether the trial court possesses authority to disapprove of transitional control at sentencing, should be answered in the affirmative.

Case No. 2024-T-0081

## II. Surrounding Points of Law and Policy

{¶54} The lead and concurring opinions fundamentally misunderstand the nature of transitional control within Ohio's sentencing framework and inappropriately restrict judicial authority. By creating an artificial distinction between a sentence and its execution, the majority seems to disregard that R.C. 2929.01(BB)(1)(b) explicitly includes prison terms "shortened pursuant to section 2967.26" within the definition of "prison term." This disregard improperly delegates judicial sentencing authority to an executive agency and contradicts the integrated statutory scheme that places transitional control decisions squarely within the court's sentencing power.

{¶55} It is undisputed that a sentencing court has authority to disapprove the transfer of a prisoner to transitional control. R.C. 2967.26(A)(2). The precise question in this case is whether the sentencing court may exercise this authority *at the time of sentencing*[3] rather than waiting until after the DRC has completed its extensive administrative process.

{¶56} Under the majority's approach, a trial court that determines at sentencing—based on the defendant's criminal history, risk factors, and the purposes of sentencing—that transitional control would be inappropriate must nevertheless remain silent until the DRC expends significant resources conducting eligibility assessments, arranging housing, employment, education, programming and supervision, soliciting victim statements, preparing institutional summary reports, and providing formal notification to

---

3. Some appellate courts have suggested that objections to transitional control may be "unripe" until after incarceration and DRC recommendation. *See, e.g., State v. Riley*, 2012-Ohio-1086, ¶ 14 (4th Dist.). However, the ripeness doctrine is prudential, not jurisdictional, and here the issue is purely legal: whether the trial court possessed authority at sentencing. Because the validity of the court's sentencing entry is not contingent on future events, the issue is ripe for review.

Case No. 2024-T-0081

the court. R.C. 2967.26; Adm.Code 5120-12. Only then may the court disapprove what it could have determined to be inappropriate months earlier.

{¶57} This approach defies both common sense and judicial economy. I would answer this question in the affirmative: trial courts possess the authority to disapprove transitional control at sentencing when such disapproval serves the purposes and principles of felony sentencing.

{¶58} The sentencing process is not a ministerial task limited to reciting statutory terms; it embodies the court's obligation to fashion a sentence that fulfills the legislature's expressed purposes under R.C. 2929.11 and 2929.12. A trial court's authority to determine the manner in which the offender serves a prison term—particularly whether transitional control should be available—is necessary to achieve the goals of protecting the public, punishing the offender, and promoting rehabilitation. To deny this authority is to reduce the judiciary to a passive participant, rather than an active guardian of the community's safety and the rule of law.

## III. Transitional Control Is an Integral Part of Sentence Execution

{¶59} The statutory and administrative framework of Ohio's sentencing laws explicitly integrates transitional control within the definition of a prison term, establishing it as a component of the court-imposed sentence rather than a separate administrative procedure. This conclusion derives from both the Ohio Revised Code and the Ohio Administrative Code provisions.

{¶60} First, R.C. 2929.01(BB)(1)(b) expressly defines "prison term" to include "[a] term in a prison . . . shortened pursuant to section 2967.26 of the Revised Code." The lead opinion ostensibly recognizes but gives no critical attention to this point. Lead

Case No. 2024-T-0081

Opinion at ¶ 24. The unambiguous inclusion of transitional control within the definition of "prison term" establishes that when a court imposes a prison term, it is necessarily imposing a sanction that encompasses the possibility of transitional control.

{¶61} The concurring opinion attempts to dismiss this clear statutory integration by arguing that a "prison term" includes only the "shortened term in prison," not "the time spent outside of prison on transitional control." Concurring Opinion at ¶ 44. This parsing misunderstands the fundamental nature of transitional control. As Adm.Code 5120-12-01(C) explicitly states, prisoners in transitional control "retain the status of inmate"—they remain confined, albeit in a different location. The concurrence's artificial distinction between "time in prison" and "time outside prison" ignores that transitional control is simply an alternative form of confinement, not freedom from the sentence.

{¶62} Second, R.C. 2929.01(DD) defines "sanction" as "any penalty imposed upon an offender who is convicted of or pleads guilty to an offense, as punishment for the offense." Since a prison term constitutes a sanction, and transitional control is statutorily incorporated into the definition of "prison term," it follows that transitional control is part of the sanction imposed by the court.

{¶63} Third, R.C. 2929.01(EE) defines "sentence" as "the sanction or combination of sanctions imposed by the sentencing court on an offender . . . ." The logical chain is clear: transitional control is part of a prison term, which is a sanction, which constitutes the sentence.

{¶64} The lead and concurring opinions' interpretation creates an internal contradiction within the statutory scheme itself. If we accept their view that transitional control is not part of the sentence because it is not "imposed by the sentencing court," we

Case No. 2024-T-0081

must then ask why the legislature explicitly included terms "shortened pursuant to section 2967.26" within the definition of "prison term" in R.C. 2929.01(BB)(1)(b). The lead and concurring opinions offer no satisfactory explanation for this inconsistency. Under basic principles of statutory construction, we must interpret statutes to avoid such contradictions and give effect to all provisions.

{¶65} The Ohio Administrative Code further confirms this understanding. Adm.Code 5120-12-01(C) explicitly states that "[a] prisoner placed into the transitional control program shall retain the status of inmate. . . ." This provision demonstrates that transitional control merely changes the location where the inmate serves the final portion of the court-imposed sentence, not the legal nature of that sentence. The inmate remains under the court's sentence, merely serving it in a different environment.

{¶66} Moreover, in an effort to support its position, the lead opinion stresses that R.C. 2967.26, the provision governing transitional control, is enveloped within R.C. Ch. 2967 which is entitled "Pardon; Parole; Probation." Lead Opinion at ¶ 26. The lead opinion then points out that R.C. 2967.26 refers to a defendant as a "prisoner" which is defined under that chapter as "a person who is in *actual confinement* in a state correctional institution." (Emphasis added.) Lead Opinion at ¶ 26. In an effort to buttress its position that the trial court lacks the authority to deny transitional control at sentencing, the lead opinion contrasts this definition with the term "offender," i.e., one who is before a trial court at a sentencing hearing after being convicted of or pleading guilty to a felony. *Id.* at ¶ 26 and 24, respectively. This distinction is not meaningful. Although R.C. Ch. 2967 addresses "prisoners," those "actually confined," this does not imply the nature of transitional control cannot be or is not part of a criminal sentence. Referring to the

Case No. 2024-T-0081

individuals subject to transitional control as prisoners merely recognizes the obvious; namely, that actual confinement is a necessary (but not a sufficient) condition of eligibility to participate in a program that is part of a criminal sentence.

{¶67} The lead and concurring opinions' attempt to separate transitional control from the court-imposed sentence creates an artificial distinction between a sentence and its execution. While the Department of Rehabilitation and Correction administers transitional control, it fundamentally remains a method of serving the court-imposed prison term. The legislative decision to specifically include terms "shortened pursuant to section 2967.26" within the definition of "prison term" demonstrates the legislature's clear intent to make transitional control an integral component of the sentencing framework—not something separate from or outside the court's sentencing authority.

{¶68} Since transitional control is part of the sentence imposed by the court, the trial court necessarily retains authority to determine all aspects of that sentence, including whether transitional control should be available in a particular case.

## IV. The Concurrence's "Nihil Obstat" Mischaracterization

{¶69} The concurring opinion characterizes my position as "nihil obstat" reasoning—that courts may act simply because nothing prohibits them from doing so. This fundamentally misrepresents the argument. I do not contend that courts have unlimited authority to act absent express prohibition. Rather, I argue that when the legislature explicitly includes transitional control within the definition of "prison term," and prison terms are expressly within the court's sentencing authority, the court necessarily possesses authority over all aspects of that prison term, including transitional control.

{¶70} The concurrence's own logic proves too much. If we accept that courts lack authority absent express statutory authorization, then courts could not make numerous routine sentencing determinations, such as ordering consecutive rather than concurrent sentences when multiple cases are involved.

## V. Trial Courts Possess Authority to Make Sentencing Determinations

{¶71} The Supreme Court of Ohio's decision in *State v. Daniel*, 2023-Ohio-4035,[4] cited by the lead and concurring opinions, actually supports the trial court's authority. While *Daniel* establishes that courts "have no inherent discretion with respect to the composition of a criminal sentence," it also recognizes that courts have the power "to impose a sentence authorized by law." *Daniel* at ¶ 16, 28.

As Justice Fischer emphasized in his dissent in *Daniel*:

> [T]he General Assembly may not "delegate to the executive branch of government the power to exercise judicial authority." [*State v.*] *Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790, 864 N.E.2d 630, at ¶ 34. And in both *Sterling* and [*State ex rel.*] *Bray*[ *v. Russell*], 89 Ohio St.3d 132, 729 N.E.2d 359, this court stated that the sentencing of an offender is solely within the province of the judiciary. *Sterling* at ¶ 31; *Bray* at 136, 729 N.E.2d 359.

*Daniel* at ¶ 81 (Fischer, J., dissenting).

{¶72} The majority's interpretation raises serious separation of powers concerns by effectively giving an executive agency (DRC) the authority to modify a judicially-imposed sentence without meaningful judicial oversight. By the time a court receives notice of potential transitional control under the majority's approach, significant resources

---

4. Unlike transitional control, the registration duty at issue in *State v. Daniel*, 2023-Ohio-4035, arose automatically by operation of law and was regulatory in nature, not punitive. Transitional control, by contrast, directly alters the execution of a prison sentence—a matter traditionally within the trial court's sentencing purview. Thus, the *Daniel* analogy is inapposite.

Case No. 2024-T-0081

will have already been committed to planning and implementing the transfer. This creates considerable pressure on courts to approve these arrangements despite potential concerns about public safety or the appropriateness of transitional control for particular offenders.

{¶73} The concurring opinion's reliance on Daniel is misplaced. Unlike the automatic arson registration requirement in Daniel, which arose "by operation of law," transitional control is a discretionary program administered by an executive agency that directly alters how a judicially-imposed sentence is served. The concurrence fails to distinguish between regulatory consequences that attach automatically to certain convictions and administrative programs that modify the execution of court-imposed sentences.

{¶74} Moreover, the concurrence ignores a critical aspect of Daniel: the Court emphasized that the legislature had specifically authorized judicial involvement only upon prosecutor request. Here, by contrast, the legislature made transitional control part of the definition of "prison term"—a sanction courts are expressly authorized to impose. The concurrence provides no explanation for why the legislature would include transitional control in the definition of a court-imposed sanction while simultaneously intending to exclude courts from any meaningful role in determining its appropriateness.

{¶75} Nothing in R.C. 2967.26 expressly prohibits a trial court from disapproving transitional control at sentencing. The statute merely establishes one specific procedure by which the court may disapprove transitional control after the DRC provides notice—it does not establish this as the exclusive means for doing so. As the Twelfth District correctly observed in *State v. Toennisson*, the statutory language "does not require the

trial court to await a decision by the adult parole authority in order to pass on transitional control. . . ." *State v. Toennisson*, 2011-Ohio-5869, ¶ 34 (12th Dist.).

{¶76} R.C. 2929.01(BB)(1)(b)'s specific inclusion of transitional control within the definition of "prison term" should control over more general provisions about the manner in which transitional control operates administratively. Furthermore, we should interpret statutes to avoid absurd results—and it would be absurd to conclude that the legislature intended to require courts to wait for the DRC to complete extensive preparations for transitional control before expressing a determination they could have made with equal validity at sentencing.

{¶77} In the absence of an express statutory limitation, courts retain concurrent authority to determine, based on the offender's particular characteristics and record, the circumstances of the offense, and the purposes of sentencing, whether transitional control is appropriate, with ultimate veto power in the event the DRC decides in favor of transitional control.

## VI. Public Safety, Judicial Economy, and Balancing of Sentencing Purposes

{¶78} The majority's focus on rehabilitation ignores the trial court's equally important obligation to protect the public. R.C. 2929.11(A) identifies three "overriding purposes" of felony sentencing, including "to protect the public from future crime by the offender and others. . . ."

{¶79} Although effective rehabilitation is an important goal under R.C. 2929.11, it is coequal with the mandates to protect the public from future crime and to punish the offender. Sentencing is not an exercise in blind optimism; it demands a realistic assessment of public risk. Rehabilitation itself is not a one-size-fits-all concept. For some

Case No. 2024-T-0081

offenders, rehabilitation may be better accomplished through structured prison programs rather than transitional control.

{¶80} As the Twelfth District recognized in *State v. Tucker*, a trial court must balance these competing purposes, and in some cases, "the trial court's obligation to promote prisoner rehabilitation" may be "outweighed by its primary duties to protect the public and punish the offender." (Citation omitted.) *State v. Tucker*, 2012-Ohio-50, ¶ 11 (12th Dist.).

{¶81} Furthermore, disallowing trial courts from addressing transitional control at sentencing imposes an unnecessary and costly burden on the Department of Rehabilitation and Correction. Requiring the DRC to initiate detailed community placement procedures, only to have them later invalidated by predictable judicial disapproval, would squander state resources, delay finality, and frustrate the sentencing process. If courts cannot disapprove transitional control at sentencing, the DRC will inevitably waste resources preparing for transitional control for inmates who will likely be disapproved later, creating systemic inefficiency throughout the criminal justice system. Judicial economy and respect for public resources favor permitting trial courts to make these determinations at the outset.

## VII. The Concurrence's Policy Objections Do Not Override Statutory Language

{¶82} The concurring opinion suggests that requiring DRC to complete extensive administrative processes before potential judicial disapproval is not "absurd" but merely reflects legislative policy choices that courts should not second-guess. This argument misses the point. The question is not whether the legislature *could* have chosen such an

Case No. 2024-T-0081

inefficient system, but whether it actually *did* so when it included transitional control within the definition of "prison term."

{¶83}  The concurrence asks us to ignore the legislature's definitional choices in favor of its preferred interpretation of administrative procedures. But when statutory definitions conflict with administrative processes, the definitions control. The legislature's decision to define "prison term" to include terms "shortened pursuant to section 2967.26" is not mere surplusage—it reflects a deliberate choice to integrate transitional control into the sentencing framework rather than treat it as a purely post-sentence administrative matter.

## VIII. Conclusion

{¶84}  For the reasons discussed above, I would affirm the trial court's judgment.

{¶85}  I maintain that the trial court possessed the authority to preclude participation in transitional control at sentencing. The lead and concurring opinions improperly constrain judicial discretion by creating an artificial distinction between sentence imposition and execution that finds no basis in the statutory framework.

{¶86}  As the majority judgment of this court is consistent with two other districts, *see State v. Howard*, 2010-Ohio-5283 (2d Dist.) and *State v. Spears*, 2011-Ohio-1538 (5th Dist.), but in conflict with the judgment pronounced on the same question by the Twelfth and First district courts of appeals [*see State v. Toennisson*, 2011-Ohio-5869, ¶ 36 (12th Dist.); *State v. Bryant*, 2012-Ohio-678, ¶ 23-24 (12th Dist.); *State v. Tucker*, 2012-Ohio-50, ¶ 9-11 (12th Dist.); and *State v. Brown*, 2016-Ohio-310, ¶ 16 (1st Dist.), respectively], I would certify the conflict and the record to the Ohio Supreme Court for review and final determination on the following question:

Case No. 2024-T-0081

Does a trial court possess the authority as a matter of law to disapprove of or foreclose a defendant's participation in any Department of Rehabilitation and Corrections' transitional release program pursuant to R.C. 2967.26 at a sentencing hearing where the defendant is sentenced to a term of imprisonment?

{¶87} I respectfully dissent.

Case No. 2024-T-0081

For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is reversed. This case is remanded for the trial court to correct its sentencing entry in accordance with this court's opinion.

Costs to be taxed against Appellee.


_____
JUDGE JOHN J. EKLUND


_____
JUDGE SCOTT LYNCH,
concurs with a Concurring Opinion


_____
JUDGE EUGENE A. LUCCI,
dissents with a Dissenting Opinion


**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-T-0081